John Wallace OGDEN et ux,
Petitioners/Cross-Respondents,

v.

DICKINSON STATE BANK,
Respondent/Cross-Petitioner.

No. C–870.

Supreme Court of Texas.

Oct. 5, 1983.

Rehearing Denied Jan. 18, 1984.

McConnico, Gregg & Jones, Dalton L. Jones and Dick H. Gregg, Jr., Houston, for petitioners/cross-respondents.

Krist, Gunn, Weller, Neumann & Morrison, William G. Neumann, Jr., Houston, for respondent/cross-petitioner.

## ON MOTION FOR REHEARING

CAMPBELL, Justice.

The Motion for Rehearing by Dickinson State Bank is granted. The Opinion of the Court delivered January 26, 1983 is withdrawn and the following is substituted.

This is a suit by John Wallace Ogden and wife to enjoin the foreclosure of real property by Dickinson State Bank under a power of sale in a builder's and mechanic's lien contract. The Bank counterclaimed for recovery on the Ogdens' promissory note and for foreclosure of the mechanic's lien. The Ogdens then amended their petition to allege a violation of the Texas Deceptive Trade Practices Act. Tex.Bus. & Comm. Code Ann. §§ 17.41 to 17.63 (DTPA). The trial court rendered judgment for the Ogdens for treble damages and attorney's fees. The court of appeals reversed the judgment of the trial court and remanded the cause for a new trial. 624 S.W.2d 214. We reverse the judgments of the courts below.

The Ogdens contracted with Alan Thayer to build a house on a lot the Ogdens owned in Galveston County. The Ogdens and Thayer executed a builder's and mechanic's lien contract, and the Ogdens gave Thayer a Mechanic's and Materialman's Lien Note for $66,000.[1] Thayer pledged the lien contract and the promissory note to Dickinson State Bank as security for an interim construction loan of $66,000. The Ogdens then paid Thayer $9,000 in cash and Thayer began construction.

A conflict between the Ogdens and Thayer arose over the Ogdens' inability to pay the balance of the contract price and Thayer stopped construction. At that time, Thayer had completed sixty to seventy percent of the construction and the Bank had advanced $64,400 of the interim construction loan.

The Ogdens met with the Bank shortly after Thayer stopped work. The Bank told the Ogdens it would not be responsible for completing the house, but that it would advance the money to complete the house if a new contractor were employed. Mr. Ogden testified he requested the Bank to split the loss with him. The Bank rejected this proposition, but offered to loan the additional money needed to complete the house, provided the $66,000 Note would be paid in full.

The Ogdens refused to pay the Bank any money, claiming none was due until the house was completed. In April 1979, the Bank posted the property for sale under the builder's and mechanic's lien. The Ogdens obtained an injunction enjoining the non-judicial foreclosure, and, later, amended their pleadings to add a deceptive trade practices claim. The Bank counterclaimed for recovery on the note or, alternatively, under the lien contract, and prayed for a judicial foreclosure.

The Ogdens contend that they do not owe the Bank any money until the house is completed and that the Bank does not have a lien for partial performance. The Builder's and Mechanic's Lien Note states the

---

[1] Both the lien contract and the promissory note stated a contract price of $66,000. The Ogdens acknowledged at trial, however, that they agreed to pay Thayer $89,380 for the house. The court of appeals, therefore, reformed the contract to reflect this actual contract price.

Note is payable "on or before one hundred twenty (120) days from date hereof subject to the completion of the contract of even date herewith." The Note further provides:

Payment of this note is secured by a Builder's, Mechanic's, Materialman's and Laborer's Lien created in a Builder's and Mechanic's Lien Contract (With Power of Sale) of even date herewith between the Makers hereof, Owners, and the Payee herein, Contractor, with JOHN F. AUSTIN, JR., named Trustee therein, and is subject to and governed by said contract, which is hereby expressly referred to, incorporated herein and made a part hereof upon the following described real property situated in Galveston County, Texas. . . .

The Lien Contract also requires payment of the Note on or before 120 days from its date "subject to the completion of this contract." This Lien Contract additionally provides:

In the event that the improvements herein mentioned to be erected, fail for any reason to be completed, or fail to be completed according to the contract, or all of the labor and material used in erection thereof fail to be provided by Contractor, then Contractor or other owner and holder of the herein described indebtedness and note shall have a valid and subsisting lien for said contract price, less such amount as would be reasonably necessary to complete said improvements according to said plans and specifications, or in such event the owner and holder of the hereinbefore mentioned indebtedness and note, at his option, shall have the right to complete said improvements, and the liens herein given shall inure to the benefit of said owner and holder.

The Ogdens contend these two provisions in the lien contract conflict, and that the payment clause, being typewritten, should control over the printed partial recovery clause. The Ogdens argue the insertion of the words "subject to the completion of this contract," prevents the Bank from recovering any money due prior to completion of the contract. We disagree.

When the provisions of a contract appear to conflict, they should be harmonized if possible to reflect the intentions of the parties. *Harris v. Rowe,* 593 S.W.2d 303 (Tex.1979). Generally, the parties to a contract intend every clause to have some effect and the Court will not strike down any portion of the contract unless there is an irreconcilable conflict. *Woods v. Sims,* 154 Tex. 59, 273 S.W.2d 617 (1954).

The provisions of the Lien Contract and Note do not conflict. They provide the contract price is payable on or before 120 days from the date of the contract; if the house is not completed within 120 days, then the contract price is due upon completion. However, if work is stopped for any reason, the holder of the note has a lien for the contract price less the amount required to complete the contract. The two provisions serve different purposes. The "subject to completion" clause is included for the benefit of the owner. It prevents him from being liable for the contract price before the house is completed. The "partial recovery" clause is included for the benefit of the contractor or other holder of the Note and Lien. This clause provides a lien for recovery if, for some reason, the home is not completed.

This is a contract lien and parties can contract as they choose. The Ogdens agreed to a lien for partial performance— "a valid and subsisting lien for said contract price, less such amount as would be reasonable to complete said contract. . . ." The proper construction of the "subject to completion" clause is that the full contract price will be paid if the house is completed according to the contract within 120 days. If, however, the construction period is more than 120 days, then the contract price is payable when the house is completed. The partial completion clause provides for a lien and a method to determine the amount secured by the lien if the work is stopped short of completion. Thus, the two provisions do not conflict but provide a complete contract.

■ The Ogdens contend the Bank began foreclosure of the lien at a time it did not have the right to do so and this Act was a violation of section 17.46(b)(12) of the Deceptive Trade Practice Act. However, as shown above, the Bank had the right under the contract lien to start foreclosure proceedings for the amount due under the partial performance lien provision. Therefore, there is no DTPA violation for commencing foreclosure.

■ The Ogdens also contend that the Bank violated the DTPA by attempting to collect $66,000, plus interest and attorney's fees under the note and contract when it was not due.

The bank officers were asked at trial whether the Bank ever agreed to reduce the $66,000 Note by the amount it would cost to complete the house. That question is immaterial to any issue in this lawsuit. The Mechanic's and Materialman's Lien provides that on partial completion the Bank shall have a lien for the contract price, less the cost to complete. The court of appeals held the true contract price was $89,380 and reformed the lien contract to that extent. A bank officer, Mr. Fitzpatrick, testified that the Bank already had $66,000 involved in this loan. The only question involved in this case is how much of the money advanced by the Bank is secured by the Mechanic's and Materialman's lien on the property as authorized by the partial construction clause. If the amount secured by the lien is less than the amount owed on the Note, the Ogdens may still be personally liable for the amount owed on the Note. *Continental National Bank of Fort Worth v. Conner,* 147 Tex. 218, 214 S.W.2d 928 (1948). Therefore, any demand for the amount of the Note cannot be a deceptive trade practice.

The jury found that the cost to complete the house when work was stopped to be $38,000. The court reformed the contract to the true contract price of $89,380. The difference in the contract price and the cost to complete is $51,380. However, the Ogdens have paid $9000 to Thayer, there-fore, the Bank's lien is for $42,380, for which it is entitled to foreclosure.

The former opinion and judgment of this Court are withdrawn and the Motion for Rehearing is granted. The Motion for Rehearing by John Wallace Ogden et ux. is overruled. The judgments of the courts below are reversed and the cause is remanded to the trial court for entry of judgment consistent with this opinion.

Dissenting Opinion by SPEARS, J., in which RAY, ROBERTSON and KILGAR-LIN, JJ., join.

SPEARS, Justice, dissenting.

I respectfully dissent.

The majority in this case has ordered that the Ogdens, who committed absolutely no wrongdoing in their dealings with the Bank and Thayer, must not only give up the "dream home" (testimony of John Ogden, Tr. 445) for which they validly contracted, but must also surrender the $20,000 lot that they previously owned free and clear.

In addition, and even more unfair, the majority suggests that under the Ogdens' *non-negotiable* promissory note to Thayer, the Bank can recover a deficiency judgment against the Ogdens if the amount secured through foreclosure on the Ogdens' property is less than the full amount of the Note. Thus, according to the majority, the Bank is entitled to collect on the Note, *just as though it were negotiable.* The Court reaches this conclusion even though the Bank has not asked us for such relief and even though the Note expressly states that it is payable "subject to completion of the contract."

The net effect of the majority's sketcy analysis is that the only truly innocent parties to the disputed transaction, the Ogden family, must shoulder the entire economic loss caused by the misconduct of their builder, Thayer, and his interim financer, the Bank. In my opinion, the Court's decision cannot be justified on any legitimate legal or equitable grounds.

The majority makes three glaring errors. First, it disregards the proper application of

established rules of contract construction. Second, the Court ignores controlling and unequivocal provisions of the Texas Uniform Commercial Code. Finally, the Court, in refusing to acknowledge the clear applicability of the Texas Deceptive Trade Practices Act to the Bank's misconduct, effectively carves out for lenders an exemption that no one else enjoys.

## I. FACTS OF THE CASE

In November 1978 the Ogdens' builder, Thayer, unilaterally breached his contract with the Ogdens by abandoning work on the house.[1] Even though construction of the house was only sixty to seventy percent complete at that time, he already had withdrawn and expended $64,400 of the $66,000 in interim construction funds borrowed from the Bank. Moreover, the work performed on the house not only failed in many respects to conform to the approved plans and specifications, but also did not comply with the applicable building code.

Shortly after Thayer abandoned work, the Ogdens met with the Bank to discuss the incomplete project. The Chairman of the Board of the Bank told the Ogdens that it expected them to pay the full amount of the note, which equalled the full contract price for the house, regardless of the condition of the house. He said, "This bank is not going to eat one penny [of its loan]." The Bank obtained two estimates of the cost to complete the house, one for $32,000 and the other for $52,000. At no time prior to this lawsuit, however, did the Bank reduce the amount sought from the Ogdens or present them with an estimate of the cost to complete the house.

## II. CONSTRUCTION OF THE CONTRACT

The parties used a standard State Bar of Texas lien contract form. One of its print-ed clauses, the partial recovery clause, provides,

> In the event that the improvements herein mentioned to be erected, fail for any reason to be completed, or fail to be completed according to the contract, or all of the labor and material used in erection thereof fail to be provided by Contractor [Thayer], then Contractor or other owner and holder of the herein described indebtedness and note shall have a valid and subsisting lien for said contract price, less such amount as would be reasonably necessary to complete said improvements according to said plans and specifications, or in such event the owner and holder of the hereinbefore mentioned indebtedness and note, at his option, shall have the right to complete said improvements, and the liens herein given shall inure to the benefit of said owner and holder.

The Bank's attorney, however, inserted another clause into both the note and the contract. That provision precedes the partial recovery clause in the lien contract and incorporates the Ogdens' obligation under the note to pay the contract price "on or before one hundred twenty (120) days from date hereof *subject to completion of this contract.*" (emphasis added).

Obviously these two provisions seem to conflict. The "subject to completion" clause says that the Ogdens owe nothing until their house is completed. The partial recovery clause, on the other hand, allows the builder or his transferee to recover some amount even if the house is not completed.

In determining the effect to be given to these two provisions, the majority has ignored clear and established rules of contract interpretation. It is true that when provisions in an instrument appear to conflict, they should be harmonized and reconciled to the greatest extent possible. *Mercer v. Hardy,* 444 S.W.2d 593, 595 (Tex.1969). In

---

1. There is no evidence to support the majority's statement that Thayer walked off the job because "[a] conflict between the Ogdens and Thayer arose over the Ogdens' inability to pay the balance of the contract price." Instead, in an attempt to justify failing to fulfill his con-

tractual obligations, Thayer testified only that he was afraid the Ogdens would not secure the necessary funds. There is no evidence, however, that the Ogdens could not have paid for the house if Thayer had completed it in compliance with the terms of the agreement.

attempting fairly and reasonably to harmonize the seemingly conflicting provisions, however, the court should favor an interpretation that affords some meaning to each part of the contract, in light of the surrounding circumstances, so that *nothing in the agreement is without consequence. R & P Enterprises v. LaGuarta, Gavrel & Kirk,* 596 S.W.2d 517, 519 (Tex.1980). Unless two provisions in the agreement are necessarily repugnant or contradictory, the parties are presumed to have intended each one to accomplish some particular purpose. *Woods v. Sims,* 154 Tex. 59, 64, 273 S.W.2d 617, 620 (1954). For this reason, an interpretation that enforces one contract term by completely nullifying another must be rejected unless the two clauses irreconcilably conflict. *Mercer v. Hardy,* supra; *Woods v. Sims,* supra.

When contract terms are so repugnant to or inconsistent with one another that an effort to reconcile them is futile, secondary rules of construction must be used. *Southland Royalty Co. v. Pan American Petroleum Corp.,* 378 S.W.2d 50, 57 (Tex.1964). These secondary rules direct courts to favor written or typewritten terms over printed ones, *McMahon v. Christmann,* 157 Tex. 403, 407, 303 S.W.2d 341, 344 (1957); to favor terms stated earlier in the agreement over subsequent terms, *Southland Royalty Co. v. Pan American Petroleum Corp.,* supra; and to resolve doubts about the meaning of the agreement against the party who prepared the instrument. *Republic National Bank v. Northwest National Bank,* 578 S.W.2d 109, 115 (Tex.1978).

The majority says that the two contractual provisions are completely reconcilable because the "subject to completion" clause can be interpreted to mean that the Ogdens are not liable for the full contract price before the house is completed. Even the Bank acknowledges, however, as it must, that if the parties had *completely excluded* this clause from their agreement, under no circumstances would the Ogdens have owed the entire contract price until the house was completed. *See Murphy v. Williams,* 103 Tex. 155, 124 S.W. 900 (1910). In fact, the Bank would be legally barred from enforc-

ing a clause that purported to *allow* such full recovery prior to substantial completion of the house. *Id.* The majority's conclusion that the "subject to completion" clause provides this protection is simply and undeniably not true.

The essence of the majority's reasoning, then, is that these clauses may be "harmonized" by considering the "subject to completion" clause to be mere surplusage, meaningless and without consequence, and disregarding it. This is a truly novel method of "harmonizing" two contract clauses, one that logically precludes an irreconcilable conflict between any two provisions in any contract. Obviously such a result cannot be correct. No provision may properly be interpreted so as to make it mere surplusage unless it irreconcilably conflicts with other contract terms. *Williams v. J. & C. Royalty Co.,* 254 S.W.2d 178, 179 (Tex.Civ.App.—San Antonio 1952, writ ref'd). Moreover, as previously noted, all contract provisions must be presumed to have been included to accomplish some purpose. This presumption is especially strong when the provision at issue is a written or typewritten one added to a printed form, as in this case.

In this case, all the secondary rules favor the contract interpretation advanced by the Ogdens. The Ogdens rely on a typewritten clause, while the Bank relies on a printed clause; the typewritten clause precedes the printed clause in the lien contract; and the Bank's attorney prepared the lien contract. As a result, according to these rules, the printed partial recovery clause should be effective only to the extent that it is reconcilable with the typewritten "subject to completion" clause.

In *Easy Living v. Cash,* 617 S.W.2d 781 (Tex.Civ.App.—Fort Worth 1981, no writ), the court confronted the same question before us now. In that case, a typewritten addendum to an office remodeling contract appeared to conflict with the "partial recovery" clause in a mechanic's and materialman's contract identical to the one at issue here. The addendum said that the plaintiffs' final payment was due upon the de-

fendants' substantial completion of the remodeling. The court held that the two provisions irreconcilably conflicted and gave effect to the typewritten provision over the printed one. Based on a jury finding that the remodeling was not substantially completed, the court concluded that the defendants were not entitled to foreclose on the plaintiffs' property, saying,

> "in the absence of a debt there is no lien which can be foreclosed upon."

*Id.* at 785.

Despite the fact that *Easy Living* is precisely on point, the majority opinion inexplicably does not even mention it. I would approve the holding by the court in *Easy Living* that a printed provision in a contract must be denied effect to the extent that it cannot be harmonized with a typewritten addendum. I would hold that the plain meaning of the "subject to completion" clause is that "completion of this contract," meaning construction of the house in conformity with the approved plans and specifications, is a condition precedent to the Ogdens' liability under either the note or the contract. As a result, the Bank should recover nothing from the Ogdens until the house is properly finished.

I would further hold that "partial recovery" clause preserves a valid lien for the contract price less the reasonable cost to complete, but that the lien arises only after the completion of the house. Thus, if the Bank declined to assert its right under the contract to complete the project, and the Ogdens then obtained completion on their own, then the Bank would be entitled to recover from the Ogdens an amount equal to the contract price less the reasonable cost to complete. This interpretation gives effect to the partial recovery clause only to the extent that it is reconcilable with the "subject to completion" addendum. Since the contract incorporated the "subject to completion" clause, the Ogdens were justified in relying on it and in believing that they owed nothing until Thayer's part of the bargain was fulfilled.

## III. THE OGDENS' DTPA CLAIM

Soon after Thayer abandoned construction of the house, the Bank met with the Ogdens and stated that it expected them to pay the full amount of the note, regardless of whether the house remained unfinished. The Bank now admits, however, that neither the note nor the contract requires payment of the full contract price or the full amount of the note until someone finishes the house. In addition, the jury in this case found that the Bank "attempted to collect [the full amount] under the note and contract executed by the Ogdens ... at a time when it was not due."

Section 17.46(b)(12) provides, in pertinent part,

> (b) The term 'false, misleading, or deceptive acts or practices' includes, but is not limited to, the following acts: ...
>
> (12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; ...

In *Leal v. Furniture Barn, Inc.,* 571 S.W.2d 864 (Tex.1978), which the majority once again refuses to discuss, this court held that under § 17.46(b)(12), a party to a contract commits a deceptive act as a matter of law when he attempts to keep or to collect money from the other party to the contract by falsely stating that the contract gives him the right to that money. In that case we said that such false statements were "of the type that the legislature intended to proscribe." *Id.* at 865. The reasoning and the holding in *Leal* also apply to this case. I do not believe we should set forth one rule of law for a furniture store, which was held liable in *Leal,* but apply a different law when a bank has committed the same wrongful act. I would therefore hold that the Bank committed a deceptive act as a matter of law when it attempted to collect on the note by falsely representing to the Ogdens in November 1978 that the note was due.

Furthermore, the facts of *Flenniken v. Longview Bank and Trust Co.,* 661 S.W.2d 705 (Tex.1983), a case the majority fails to mention, are virtually identical to this case.

In *Flenniken,* as here, the homeowners chose a builder to construct a house for them, and gave him a mechanic's and materialman's lien contract and a mechanic's lien note. In *Flenniken,* as here, the builder assigned the lien contract and note to a bank as security for interim construction financing. The builder in *Flenniken* failed to finish the house, and the bank foreclosed on the buyer's property.

In *Flenniken,* the jury found that the foreclosure was an unconscionable course of action. Hence, the Flennikens had a claim under § 17.50(a)(3) of the DTPA. In the instant case, the jury found that the Bank had attempted to collect the sum of $66,000 plus interest and attorney's fees when it had no right to do so. Those acts would be "laundry list" violations under § 17.46(b) of the Act, giving rise to a cause of action under § 17.50(a)(1). Because a violation of either provision gives rise to liability under the act, *Flenniken* and this case are indistinguishable. Yet the majority says that the Flennikens recover under the DTPA, but the Ogdens do not.

## IV. RECOVERY AGAINST THE OG-DENS ON THE PROMISSORY NOTE

The majority opinion says that "the Ogdens may still be personally liable [to the Bank] for the amount owed on the Note." The majority neglects to tell us *how* the Ogdens could be liable for the amount of the note when the note itself expressly states that it is due and payable "SUBJECT TO THE COMPLETION OF THE CONTRACT" which was "expressly incorporated" into the note. Thus, after informing us that "subject to completion" in the *contract* means that the Ogdens are not liable for the full contract price until completion, the majority refuses to give this same meaning to the identical words in the *note!* Instead, notwithstanding the express language to the contrary in the note, the Ogdens "may still be personally liable for the amount owed on the Note." The majority shifts the losses of a bad loan from the lending institution to an innocent consumer.

What law controls the rights of a transferee of a promissory note against the maker of that note? Until today, the Texas Uniform Commercial Code (UCC) governed such matters. In this case, however, without even a citation to the relevant portions of that Code, the majority reaches its conclusion that the Ogdens' note is due.

If the Bank in this case were a holder in due course of the note, then it probably could recover on the note from the Ogdens, because its rights would not be affected by the contract between the Ogdens and Thayer. It would take free of any contract defenses or terms. This recovery would then extinguish the Ogdens' contract liability to Thayer or his assignee.

In this case, however, the Texas UCC makes it clear that the Bank is not a holder in due course. A transferee of a note cannot be a holder in due course unless the note is negotiable. Tex.Bus. & Com.Code Ann. §§ 3.302, 3.102. Additionally, a note is negotiable only if it, among other things, "contains an *unconditional* promise . . . to pay a sum certain." *Id.* at § 3.104(a)(2). But "[a] promise is *not unconditional* if the instrument states that it is subject to or governed by any other agreement." *Id.* at § 3.105(b).

The Ogdens' note plainly says it "is subject to and governed by said contract." I do not believe it is possible for statutory language to be more clearly and easily applicable than it is here.

Furthermore, the Bank has not asked this Court to grant recovery on the note in the capacity of a holder in due course or otherwise, yet the majority now says such recovery is permissible.

The Bank, instead, seeks recovery in the only capacity open to it: as Thayer's contract assignee. The Bank, therefore, possesses only those rights against the Ogdens that its assignor Thayer had. *Id.* at §§ 3.302, 3.119(a) (comment 3). This was an established principle of contract law even before the UCC was enacted.

Thayer could not recover against the Ogdens before completing the house; why,

then, is the Bank entitled to such recovery? The majority does not enlighten us. The only authority it gives is *Continental National Bank of Fort Worth v. Conner,* 147 Tex. 218, 214 S.W.2d 928 (1948), a case decided *before* the enactment of the UCC. Moreover, in that case, this Court explained in detail that the promissory note in question *was* a negotiable instrument, *id.* at 930–32, and that the Continental National Bank *was* a holder in due course, *id.* at 932–33, thus giving the bank the right of recovery that it otherwise would not have enjoyed. *Id.* at 930. This Court observed that the note did not "contain the words 'burdened with,' 'subject to,' or their equivalent," which would have caused it to be non-negotiable. *Id.* at 931. Additionally, we went on to hold that insofar as the bank was not a holder in due course, it could "recover from the [makers of the note] *only to the extent that [the contractor/payee] himself could recover for his work done under the mechanic's lien contract.*" *Id.* at 933. Thus, contrary to the majority opinion here, *Conner* dictates that the Bank can recover from the Ogdens only to the extent that Thayer could have recovered from them under his mechanic's lien contract. The majority does not cite any authority that says the Bank should recover on the Ogdens' note. I have been unable to find any such authority, in this state or any other, for this Court's treatment of the Ogden family. As a result, it appears that the Court's action in this case is not only unwise and contrary to the Texas UCC, but is also unprecedented.

If Thayer, the defaulting contractor, instead of his transferee, the Bank, were seeking recovery from the Ogdens, I cannot believe this Court would allow him to foreclose on the Ogdens' property and then obtain a deficiency judgment for the remainder of the amount of the note. To do so would allow a party who breaches his contract to get his full contract price, the entire benefit of his bargain, without performing his part of the deal.

Nevertheless, this Court has ordered such a recovery for the Bank, who for purposes of this suit, stands in Thayer's shoes and has only the rights against the Ogdens that he had. In my opinion, banks should be accorded no rights, privileges, or special treatment that others do not receive. We should treat them neither less nor more favorably than anyone else.

RAY, ROBERTSON and KILGARLIN, JJ., join in this dissenting opinion.