Douglas A. McPHERSON, et al, Appellant,

v.

ERIC J. WEISSGARBER, INC., and Crow American Corporation, Appellee.

No. 04–86–00231–CV.

Court of Appeals of Texas, San Antonio.

June 10, 1987.

Rehearing Denied July 14, 1987.

W.R. Simcock, Rebecca Simmons, San Antonio, for appellant.

Joseph E. Brodigan, Les Mendelsohn, James M. Heidelberg, San Antonio, for appellee.

Before BUTTS, DIAL and CHAPA, JJ.

OPINION

CHAPA, Justice.

This appeal is from a suit initiated by Douglas A. McPherson, Jean T.L. McPherson, Charles C. Frawley, Wilson W. Grant, Charleen Paasch, Masterlink, B.G. Gaffney, Barbara E. Stieren, C.E. DeVoll, Jr., and Russell H. Kyse[1] (hereinafter referred to as "Limited Partners") against Eric J. Weissgarber, Inc. and Crow American Corporation (hereinafter referred to as "Weissgarber," "Crow," or "General Partners") for breach of contract, specifically breach of the Articles of Limited Partnership entered into between the parties. The Limited Partners filed this suit for an accounting, alleging that the General Partners had withdrawn $74,957.24 in excess of the General Partners' share of the Limited Partnership's Profits. DeVoll and Masterlink also sought damages from Crow, the managing general partner, for failure to timely provide tax information as required by the Articles of Limited Partnership. The judgment, rendered upon a jury verdict, was in favor of Crow and Weissgarber.

1. Russell H. Kyse did not join in the appeal.

The limited partnership was formed in 1981 for purpose of developing certain real estate into an industrial and office building park. An initial contribution of $20,000.00 per interest was made by each of the Limited Partners [2] except DeVoll, who obtained two partnership interests, and Kyse, who contributed services and $10,000.00 for his interest. A total of $210,000.00 was contributed by the Limited Partners.

This controversy arose from a disagreement over how, under the Articles of Limited Partnership, the net profits were to be distributed between the General and Limited Partners. The relevant portions of the Articles of Limited Partnership are found in Article V:

1. The fiscal year of the partnership shall be on a calendar year basis. The net profit or loss of the partnership shall be determined in accordance with approved and accepted accounting practices as soon as possible after the close of each fiscal year. The books of the partnership shall be kept on a cash basis and the Partnership shall report on a cash basis for tax purposes.

\* \* \* \* \* \*

2. The net profits, including capital gains, earned by the partnership during each fiscal year shall be credited as of the close thereof to the capital accounts of the following Limited Partners in the following proportions until such time as such Limited Partners have received a full refund of their initial investment as reflected on the attached Exhibit "B": [the names and percentages of ownership of the Limited Partners are then set out].

3. After the above Limited Partners have received a full refund of their initial investment pursuant to paragraph 2 herein, the net profits, including capital gains, earned by the partnership during each fiscal year shall be credited as of the close thereof to the capital accounts of the partners in the following portions: [the General Partners: 45%; the Limited Partners: 55%].

4. ... "Profits" and "losses" are to be determined according to generally accepted accounting principals.

All parties agree that a full refund of the initial investment had been credited to the Limited Partners' accounts as of July 7, 1983. After July 7, 1983, the Partnership generated net profits of $166,996.36.

The Limited Partners' first point of error claims that the trial court committed reversible error in finding that the Articles of Limited Partnership were ambiguous. They contend that the terms of Article V of the Articles of Limited Partnership are unambiguous and that under those provisions the General Partners are only entitled to 45% of the net profits received after the return of the Limited Partners' initial investment. The General Partners assert that "net profits" cannot be determined until all of the debts, expenses, and repayment of the Limited Partners' initial investment have been deducted from the total profits of the partnership. It is the method used to determine "net profits" that the General Partners claim is the ambiguity in the Articles of Limited Partnership.

■ The rules of interpreting contracts to determine whether they are ambiguous have been clearly set out by the Texas Supreme Court in *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex.1980):

The question of whether a contract is ambiguous is one of law for the court. The *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515 (Tex. 1968); *Meyers v. Gulf Coast Minerals Management Corp.*, 361 S.W.2d 193 (Tex.1962). In the interpretation of contracts the primary concern of the courts is to ascertain and to give effect to the intentions of the parties as expressed in the instrument. *Citizens Nat. Bank in Abilene v. Texas & P. Ry. Co.*, 136 Tex. 333, 150 S.W.2d 1003 (1941). To achieve this object the Court will examine and consider the entire instrument so that none of the provisions will be rendered meaningless. *Southland Royalty Co. v. Pan American Petroleum Corp.*, 378

**2.** Masterlink received its interest on assignment from William D. Gray.

S.W.2d 50 (Tex.1964); *Steeger v. Beard Drilling, Inc.*, 371 S.W.2d 684 (Tex.1963). If a written instrument is so worded that a court may properly give it a certain or definite legal meaning or interpretation, it is not ambiguous. On the other hand, a contract is ambiguous only when the application of the applicable rules of interpretation to the instrument leave it genuinely uncertain which one of the two meanings is the proper meaning.

*Universal C.I.T. Credit Corp. v. Daniels*, 150 Tex. 513, 243 S.W.2d 154 (1951); *Lewis v. East Texas Finance Co.*, 136 Tex. 149, 146 S.W.2d 977 (1941). If after applying the established rules of interpretation, a written instrument remains reasonably susceptible to more than one meaning, extraneous evidence is admissible to determine the true meaning of the instrument.

*R & P Enterprises*, 596 S.W.2d at 518–19. If the provisions of a contract appear to be in conflict, the court should harmonize the provisions, if possible, to reflect the intention of the parties. *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex. 1983). "Generally, the parties to a contract intend every clause to have some effect and the Court will not strike down any portion of the contract unless there is an irreconcilable conflict." *Id.* at 332.

■ The General Partners interpret "net profits" to mean that in order to make a distribution under Paragraph 3 of Article V of the Articles of Limited Partnership, all of the debts and expenses as well as the initial investment would have to be deducted from the total profits of the partnership. That is, there could be no "net profits" to credit to the capital accounts of any partner under Paragraph 3 until all of the property had been sold, all expenses and debts paid and the initial investment returned. This interpretation of "net profits" creates a direct conflict within Paragraph 3. It also conflicts with Paragraphs 1 and 2.

Paragraph 1 states that "[t]he fiscal year of the partnership shall be determined ... as soon as possible after the close of each fiscal year." Paragraph 3 states that "the net profits ... earned by the partnership during each fiscal year shall be credited as of the close thereof to the capital accounts of the partners...." The interpretation of "net profits" asserted by the General Partners is in direct conflict with these provisions. Paragraphs 1 and 3 clearly state that the net profits are to be determined after the close of each fiscal (calendar) year and not after all of the property is sold.

Paragraph 2 of Article V states that the "net profits ... earned by the partnership during each fiscal year shall be credited as of the close thereof to the capital accounts of the following Limited Partners ... until such time as such Limited Partners have received a full refund of their initial investment...." The General Partners' interpretation of "net profits" requires that the initial investment of the Limited Partners be returned before the "net profits" can be determined; however, the Limited Partners' initial investment is to be credited out of the "net profits" earned during each fiscal year. The General Partners' interpretation of "net profits" would have the effect of eliminating any effect to be given to Paragraph 2. Therefore, the General Partners' interpretation of "net profits" is not a reasonable interpretation.

We hold that the Articles of Limited Partnership are so worded that we may give the instrument a certain and definite legal meaning of interpretation. Since the instrument is reasonably susceptible to only one meaning, the Articles of Limited Partnership are not ambiguous. Paragraph 1 of Article V states that net profits are to be determined at the close of each fiscal (calendar) year. Paragraph 2 states that the net profits earned during each fiscal year are to be credited to the Limited Partners' capital accounts until the Limited Partners have received a full refund of their initial investment. Paragraph 3 states that after the Limited Partners have received a full refund of their initial investment, 45% of the net profits are to be credited to the capital accounts of the General Partners and 55% to the Limited Partners' capital accounts. The Limited Partners' first point of error is sustained.

Much of the evidence put on by the General Partners has as its foundation the finding that the Articles of Limited Partnership were ambiguous. The Limited Partners' fourth through tenth points of error complain of the admission of evidence founded on the improper ruling of ambiguity. The Limited Partners' second and third points of error claim that the evidence presented established that the General Partners withdrew $74,957.24 in violation of the unambiguous Articles of Limited Partnership or, in the alternative, that the lack of such finding by the jury was against the great weight and preponderance of the evidence. The Limited Partners' thirteenth through sixteenth points of error raise both a factual and legal sufficiency of the evidence challenge to the failure to grant judgment for Masterlink and DeVoll for damages due to the failure of the General Partners to timely provide income tax returns. One of the defenses raised by the General Partners to these allegations was that the income tax returns were delayed due to disagreement over the interpretation of "net profits."

Having found that the trial court erred in finding that the Articles of Limited Partnership were ambiguous, it is clear that this case was tried under the wrong theory. The facts and issues raised under the Limited Partners' points of error are so intertwined with the facts and issues relating to the issue of ambiguity of the Articles of Limited Partnership that these issues are not clearly separable without unfairness to the parties. Therefore, we reverse and remand this case to the trial court for a new trial in accordance with this decision. TEX.R.APP.P. 81(b)(1). *See Morrow v. Shotwell*, 477 S.W.2d 538 (Tex.1972); *Waples-Platter Co. v. Commercial Standard Insurance Co.*, 156 Tex. 234, 294 S.W.2d 375 (1956); *Harder v. Sanders*, 155 Tex. 149, 284 S.W.2d 144 (1955).

BUTTS, Justice, dissenting.

I respectfully dissent. The agreement is one which may appear, at first glance, to be unambiguous on its face. Even the plaintiffs' expert witness, their accountant, agreed that a different interpretation other than his own of paragraph 2 of article V could be made by some other certified public accountant.

It can be seen from the contract that the general partners could have interpreted the meaning of net profits and how they were to be distributed as they did, while it can just as easily be seen how the limited partners could place a different meaning on the same words. The contract is reasonably susceptible to more than one meaning. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex.1980). I would hold the trial court correctly ruled as a matter of law that the contract was ambiguous.