NUMBER 13-00-617-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
                                                                                                                      

PIONEER NATURAL RESOURCES 
USA, INC., F/K/A PARKER & PARSLEY 
PETROLEUM USA, INC., PARKER & 
PARSLEY DEVELOPMENT, L.P.,
                                                                                                    Appellants,

v.

W. L. RANCH, INC. and 
CARL FLENTGE,                                                                                                                                                                                       Appellees.
                                                                                                                                      

On appeal from the 335th District Court of Burleson County, Texas.
                                                                                                                      

O P I N I O N

Before Justices Hinojosa, Dorsey


 and Amidei



Opinion by Justice Amidei
          
         W.L. Ranch, Inc. filed suit against Pioneer Natural Resources USA, Inc., f/k/a
Parker & Parsley Petroleum USA, Inc., Parker & Parsley Development, L.P. and Parsley
Petroleum Co. (Pioneer), for trespass, negligence, common law fraud, and statutory
fraud


 regarding a horizontal well drilled pursuant to an oil and gas lease. Pioneer
appeals from a judgment favoring W.L. Ranch, Inc. which resulted from a partial summary
judgment, a jury trial, and a bench trial. 
          Appellant presents seven issues claiming the drilling of the well did not constitute
trespass because unitization kept the oil and gas lease between the parties in force and
effect at all times during the drilling of the well. Appellant further argues that there is no
evidence of negligence, fraud or damages to appellee. We reverse and render.
Factual and Procedural Background
          Appellant was the lessee under an oil and gas lease covering 103.75 acres of
appellee’s land in Burleson County, Texas. The lease provided a “primary term” of one
year from August 20, 1993, and as long thereafter as “operations” were conducted upon
“said land,” i.e., the 103.75 acres described in the lease. The lease authorized pooling or
unitization with other lands upon which “operations” could be conducted to extend the
primary term in the absence of operations on appellee’s land. 
          On June 28, 1994, appellee executed an amendment to the lease increasing the
maximum size of a production unit from 320 to 380 acres. Prior to August 20, 1994,
appellee’s 103.75 acres was assigned to the Newberry HU No.1 production unit. Appellant
pooled appellee’s 103.75 acres with 274.97 acres from three other tracts to form a 378.72
acre production unit also known as the “Newberry Unit.” 
          Pursuant to a permit appellant obtained from the Texas Railroad Commission to drill
a horizontal well on the “Newberry Unit,” appellant spudded in or commenced drilling on
the Newberry tract of the “Newberry Unit” on August 11, 1994. The well was drilled
horizontally under appellee’s land 1,150 feet in the Buda formation, and 1,150 feet in the
Austin Chalk formation, although the well bore did not penetrate appellee’s land until after
August 20, 1994. The well was completed and placed into production on October 18,
1994. The well was plugged on January 16, 1999, because the production from the well
was not sufficient to repay appellant’s drilling expenses. The production revenues were
$644,893, whereas appellant’s drilling expenses were $1,677,700 and its production
expenses were $221,213. Appellee received $43,163 royalties from the well production.
          Appellant and appellee filed motions for summary judgment regarding whether the
lease terminated because appellee commenced operations on the Newberry tract instead
of appellee’s tract, and the well bore did not penetrate appellee’s land until after the end
of the primary term of the lease, i.e., August 20, 1994. The trial court entered a partial
summary judgment holding that the lease terminated.
          Thereafter, appellee’s claims were submitted to the jury, which upheld all of
appellee’s claims and denied appellant‘s defenses. Then a bench trial was held as to
attorney’s fees, expert witness fees, and costs of copies of depositions. The trial court
awarded appellee $264,000 in attorney’s fees, $88,668 prejudgment interest, and $39,675
for expert witness fees and costs for copies of depositions.
Standard of Review for Summary Judgment
          We review the trial court’s granting of a motion for summary judgment de novo. 
Acceptance Ins. Co. v. Lifecare Corp., 89 S.W.3d 773, 777 (Tex. App.–Corpus Christi
2002, no pet.). In a traditional motion for summary judgment, the movant has the burden
of showing, with competent proof, that no genuine issue of material fact exists, and that it
is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. 
Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). If the movant’s motion and summary
judgment proof facially establish its right to judgment as a matter of law, the burden shifts
to the non-movant to raise a material fact issue sufficient to defeat summary judgment. 
HBO v. Harrison, 983 S.W.2d 31, 35 (Tex. App.–Houston [14th Dist.] 1998, no pet.).
          When a trial court grants a summary judgment, the losing party appeals, and an
appellate court finds reversible error in the judgment, the appellate court’s normal action
is to reverse the trial court’s judgment and remand the cause to the trial court. Jones v. 
Strauss, 745 S.W.2d 898, 900 (Tex.1988). An exception may occur when both parties
moved for judgment and one such motion was granted, but the other denied. Id. Then
the appellate court should determine all questions presented, and may reverse the trial
court judgment and render such judgment as the trial court should have rendered, including
rendering judgment for the other movant. Id.
          An oil and gas lease is construed in accordance with the rules of construction
applicable to contracts, and the primary rule is to ascertain the true intention of the parties. 
Heritage Res., Inc. v. Nationsbank, 939 S.W.2d 118, 121 (Tex. 1995). The court will not
strike down any portion of the contract unless there is an irreconcilable conflict. Ogden v. 
Dickinson, 662 S.W.2d 330, 332 (Tex. 1982).
Issues Presented
          Appellant’s first issue claims the trial court erred in denying appellant’s motion for
partial summary judgment and in granting appellee’s motion for summary judgment,
thereby finding that the oil and gas lease in question was not kept in force after August 20,
1994. In its motion for summary judgment, appellee argued that the oil and gas lease
terminated when the well bore did not penetrate appellee’s land until after August 20, 1994,
and therefore appellant committed trespass to appellee’s property. The trial court granted
appellee’s motion and held the lease was not kept in force after August 20, 1994, by the
drilling operations commenced by appellant on the Newberry tract.
          Appellee argues the primary term


 of the lease was not extended by the pooling
provisions of the lease.


 According to appellee, the addendum which provides for
termination at the expiration of the primary term, or any time thereafter if oil or gas is not
being produced in paying quantities from the lease premises, or the lessee is not then
engaged in the actual drilling operations on the lease premises,


 conflicts with lease
provisions as to pooling, and controls by virtue of another addendum provision making the
addendum controlling to the extent of the conflict.


 Specifically, appellee claims the
language in the first sentence of paragraph 17 of the addendum conflicts with paragraph
4 of the lease and overrides the pooling provisions because it only allows production or
actual drilling on appellee’s 103.75 acres to maintain the lease beyond the primary term. 
          When the provisions of a contract appear to conflict, they should be harmonized if
possible to reflect the intentions of the parties. Ogden, 662 S.W.2d at 332. Generally, the
parties to a contract intend every clause to have some effect and the Court will not strike
down any portion of the contract unless there is an irreconcilable conflict. Id. 
          If the second sentence of paragraph 17 is read with its first sentence it is clear that
the parties did not intend to eliminate pooling from the lease. The second sentence
includes production from any well pooled with or drilled on the 103.75 acres which will
extend the primary term of the lease. (emphasis supplied). Appellee does not mention the
second sentence in its argument. Appellee claims that paragraphs 2 and 4 conflict
because paragraph 2 limits the term extending operations to “said land” or the appellee’s
103.75 acres, whereas paragraph 4 includes operations on any part of any land unitized
with the 103.75 acres. Considering all of the provisions of the lease and the addendum,
no language expressly prohibits or limits pooling. 
          One of the legal consequences of a unitized lease as between the lessor and the
lessee, in the absence of express agreement to the contrary, the life of the lease is
extended as to all included tracts beyond the primary term and for as long as oil, gas or
other minerals are produced from any one of the tracts included in the lease, with each
lessor relinquishing his right to have his own tract separately developed. Southland
Royalty Co. v. Humble Oil & Ref. Co., 249 S.W.2d 914, 916 (Tex. 1952) (emphasis
added). In short, the parties, by the execution of a unitized lease, agree that production
of oil or gas from wells located on any tract included in the lease will be regarded during
the life of the lease as production from each and all other tracts included therein. Id. In
the instant case, the appellant and appellee agreed to a unitized lease without an express
agreement that the lease could not be extended by commencement of operation or
production on land other than appellee’s. Even if there were a conflict as contended by
appellee, it is not an irreconcilable conflict, and it is reasonable to conclude the parties
intended to agree to the pooling or unitization which was effected by appellant.
          The trial court erred in granting appellee’s motion for partial summary judgment and
such error probably caused the rendition of an improper judgment. Tex. R. App. P.
44.1(a)(1). The effect of the error deemed appellant a trespasser prior to the jury trial. 
Appellant could not defend on the basis the lease was in full force and effect at the time
it drilled the well and appellant was therefore authorized by appellee to drill on or under
appellee’s land.
          Appellant’s issue number one is granted. We reverse the trial court’s partial
summary judgment, and its award of $220,059 trespass damages to appellee. We render
judgment the trial court should have rendered ,and hold as a matter of law the oil and gas
lease between appellant and appellee did not terminate on August 20, 1994, as the drilling
operations commencing on the Newberry tract effectively extended the primary term of the
lease by virtue of the unitization with other tracts into the Newberry HU-No.1 production
unit. See Jones, 745 S.W.2d at 900 (appellate court may reverse and render when
considering conflicting motions for summary judgment).
          Appellant’s second issue states there is no evidence that appellant was negligent
in the way it drilled the Newberry horizontal well.
          Appellant objected


 to the testimony of Tom Kitching, appellee’s only expert, on
grounds that Kitching was not qualified as an expert on drilling horizontal wells, and he did
not establish a standard of care for drilling a horizontal well. Although Kitching had
experience drilling vertical wells, he admitted he did not have any experience in drilling
horizontal wells which are more complex than vertical wells. Although Kitching testified
about some problems appellant had in drilling the well, he did not establish an applicable
standard of care or that any problems resulted from a violation of the standard of care. 
Appellee failed to prove Kitching was a qualified expert to express an opinion as to
negligence in drilling a horizontal well, or establish a standard of care in such connection. 
Broders v. Heise, 924 S.W.2d 148,149,152-53 (Tex. 1996) (offering party has burden to
establish that the expert has “knowledge, skill, experience, training, or education” regarding
the specific issue before the court which would qualify the expert to give an opinion on that
particular subject) (emphasis supplied); see also Gammill v. Jack Williams Chevrolet, Inc.,
972 S.W.2d 713, 719, 727 (Tex. 1998). 
          In reviewing the evidence under a no-evidence point, we consider all the evidence
in the light most favorable to the prevailing party, indulging every reasonable inference in
that party’s favor. Assoc. Indem. Corp. v CAT Contracting, Inc., 964 S.W.2d 276, 285-86
(Tex. 1998). If there is any evidence of probative force to support the finding, the courts
will overrule the no evidence point. ACS Investors, Inc. v. McLaughlin, 943 S.W.2d 426,
430 (1997). Kitching’s testimony was not probative and should have been excluded as it
was shown he was not a qualified expert regarding horizontal wells.
          Appellee claims that even if Kitching’s testimony is excluded, appellant’s own
experts’ testimony offered proof that appellant was negligent. According to appellee,
problems encountered with the directional drilling equipment prompted the directional
drilling subcontractor to credit $50,000 to appellant’s account. Appellee did not establish
that generally problems with drilling equipment violates a standard of care. The fact that
appellant drilled the well at less expense benefitted appellee. Problems with drilling
equipment in drilling an oil well is to be expected but cannot be the basis of a negligence
cause of action. An oil well driller does not ordinarily guarantee that he will have no
problems with the drilling equipment when drilling a well.
          Appellee further argues that appellant was negligent because the casing was set
103 feet above the Austin Chalk formation rather at the exact top thereof. Although
appellant’s expert Peay stated the well would never get drilled if the casing was set in the
Taylor shale rather than the Austin Chalk, the fact is that the well was successfully drilled
from the place the casing was set. Peay testified that beginning the lateral 103 feet above
the Austin Chalk was a “minor detail,” not that it violated some standard of care. The well
was actually drilled to a lateral distance of 3,069 feet.
          Appellee also argues that appellant was negligent because drilling in shale cost
more and took more time. However, Peay testified that finding the most productive 20 feet
of the chalk formation, which has random fractures and undulations, is a problem
encountered in drilling a horizontal well, and that running into shale is “no big deal.” Peay
concluded that there was nothing about the way the well was drilled indicated that
appellant used poor drilling practices. Further, appellant’s other expert Holditch testified
that the reason the well did not produce more was because of the poor reservoir quality
which was found in all of the wells drilled in that area.
          Appellee further argues that appellant was negligent because it filed false reports
with the Texas Railroad Commission. Assuming there were false reports filed, appellee
waived its argument by not citing any supporting authority establishing that such filing is
evidence of negligence. Tex. R. App. P. 38.1(h).
          Finally, appellee argues that the fact that appellant did not drill any more horizontal
wells in the area is indicative of negligence. Appellee waived its argument by not
developing a concise argument or citing any authority establishing that such failure to drill
is evidence of negligence. See id.
          While the jury could disbelieve the testimony of appellant’s experts, they could not
use such evidence for the basis of making an affirmative finding exactly contrary to the
facts testified to by these experts. Hawkins v. Campbell, 226 S.W.2d 891, 897 (Tex. Civ.
App.–San Antonio 1950, writ ref’d n.r.e.). The jury could not find the converse of such
testimony in the absence of independent evidence to support such finding. Schwartz v. 
Pinnacle Communications, 944 S.W.2d 427, 434 (Tex. App.–Houston [14th Dist. 1997, no
writ); Rep. Nat. Life Ins. Co. v. Heyward, 568 S.W.2d 879, 883 (Tex. Civ. App.–Eastland
1978, writ ref’d n.r.e.). There is no such independent evidence to support the jury’s finding
in question number two that appellant was negligent. The jury could not find appellant was
negligent by using the testimony of the appellant’s experts. Appellant’s objections


 that
there was no evidence and factually insufficient evidence to find the drilling of the well was
negligent were overruled by the trial court.
          Appellant’s second issue is granted. There being no evidence of appellant’s
negligence, we set aside jury findings answering jury questions number two (negligence),
number three (proximate cause) and number four (negligence damages).
          In its issues three and four, appellant claims that its drilling was not the proximate
cause of any injury to appellee, and there was no proof of damages for negligence. 
Because of our ruling on issue number two that there was no evidence of negligence, we
grant appellant’s issues numbers three and four. In any event, appellee could not have
been damaged because the uncontradicted testimony of appellant’s expert established that
all the available reserves were recovered from the horizontal well. It is axiomatic that if
there are no reserves available, there can be no royalties which could be lost as claimed
by appellee. Thus, there could not be any drainage or loss because no other operator
would lease and drill appellee’s property as claimed by appellee. During the time appellant
operated under the lease, it adequately protected appellee’s property from drainage by
unitizing the property with other tracts. Southeastern Pipe Line Co. v. Tichacek, 997
S.W.2d 166, 170 (Tex. 1999). The documents filed with the Texas Railroad Commission
do not reveal anything which taint the marketability of the mineral estate in appellee’s
property. The fact that all of the available oil has been removed might deter any
prospective operator. 
          In it’s fifth and sixth issues, appellant asserts there is no evidence or insufficient
evidence that appellee suffered any injury or was damaged by any fraud. Appellee alleged
that it was induced to execute an amendment to the oil and gas lease increasing the
maximum size of the unit from 320 to 380 acres by two misrepresentations by Gary Lang,
appellant’s employee. Lang made the statements as to past or existing facts as follows:
(1) appellant planned to drill a horizontal well with three 4500 foot laterals (horizontal well
bores), and (2) based on Texas Railroad Commission rules, appellant needed 380 acres
in order to drill the 4500 foot laterals. Appellee’s witnesses admitted in their testimony that
the representations were not promises to drill three 4500 foot laterals. It was not
established that appellant would not have drilled the 4500 foot laterals if necessary, or that
4500 foot laterals would have been more of a benefit to appellee than the laterals actually
drilled.
          Appellant was entitled to drill the Newberry well even without the amendment. The
alleged misrepresentations were not promises to induce the execution of the amendment
and obviously are not false misrepresentations of past or existing material facts as found
by the jury in question number 5. Appellant objected to the submission of jury question
number 5 because (1) there was no evidence, and factually insufficient evidence to support
its submission, and (2) it was overly broad and failed to limit the jury to specific alleged acts
of fraud. 
          Jury question number 5 further inquired whether the fraud injured appellee. If there
is fraud in the inducement, out of pocket damages (the difference between the value paid
and the value received) or the benefit-of-the-bargain damages (difference between the
value as represented and the value received) are the recognized measures of damages. 
Formosa Plastics Corp. v. Presidio Eng’rs & Contractors, Inc., 960 S.W.2d 41, 49 (Tex.
1998). Over appellant’s objection, the trial court submitted both measures in jury question
number 7, and the jury found $511,000 in damages for each measure.
          Even assuming Kitching’s testimony was admissible, he did not testify as to the
elements of the measures of damage submitted to the jury. Kitching’s testimony was that
appellee lost royalties in the amount of $511,000. Lost royalties would not be either out
of pocket to appellee or the benefit of the bargain because appellee did not pay anything
for the amendment, and the appellant did not represent any value to appellee with appellee
receiving $43,163 royalties, the benefit of its bargain. The injury suffered in a fraud case
must be directly traceable to, and which resulted from, the false representation upon which
the injured party relied. McCurry v. Aetna Cas. & Sur. Co., 742 S.W.2d 863, 867 (Tex.
App.–Corpus Christi 1987, writ denied). Appellee has not advanced a concise argument
that lost royalties are traceable to the alleged misrepresentations, and has not cited any
authority to support such position. Such violations of the briefing rules by appellee waives
its position on the issue. Tex. R. App. P. 38.1(g),(h). 
          If appellant became a trespasser because the oil and gas lease terminated on
August 20, 1994 as claimed by appellee, all of the mineral interest reverted to appellee,
including any royalty interest. Jupiter Oil Co. v. Snow, 819 S.W.2d 466, 468 (Tex. 1991)
(grantor’s possibility of reverter in the mineral estate becomes a present possessory
interest only upon the termination of the lease). Under appellee’s theory, at the time of the
alleged trespass or drilling under appellee’s property, the mineral estate (ownership of the
oil and gas in place) reverted to appellee, and the royalty interest it previously owned
terminated. The jury finding of $511,000 damages to compensate appellee for fraud was
based on Kitching’s estimate of lost royalties which was calculated using appellee’s
percentage interest in the unit, although appellee no longer owned an interest in the unit. 
His calculations included all of the tracts in the unit, but he admitted he could not allocate
how much oil came from each of the tracts. There is no evidence of the amounts of
remaining reserves remaining under the tracts of the unit or under appellee’s property. 
Kitching’s estimate was not based on the amount of oil remaining. The amount of
remaining oil under appellee’s property is not related to the unit or appellee’s previous
percentage interest therein. Therefore, there being no damage to the reservoir, and no
royalties owned or lost by appellee, the jury finding of $511,000 in question number 4 for
negligence damages, and the jury finding of $511,000 in question number 7 for fraud
damages were based on incorrect and irrelevant calculations of an unqualified expert. 
There was no evidence of the value of the amendment or that appellee paid or parted with
anything of value by agreeing to the amendment, but appellee did receive unspecified
valuable consideration as stated in the amendment and was paid $43,163 royalties. There
is no evidence appellee was injured because of the amendment.
          There is no evidence to support the trial court’s submission of jury question number
7 and the jury’s answers thereto. Appellant’s fifth and sixth issues are granted, and we
disregard and set aside said jury question and findings number 7. The submission of
question number 7 to the jury probably caused the rendition of an improper judgment. Tex.
R. App. P. 44.1(a)(1).
          Appellant complains in its seventh issue that appellee failed to prove any basis for
the exemplary damages it was awarded. Considering that we have discussed and held in
the foregoing issues that appellee is not entitled to recover actual damages from appellant,
appellee cannot recover exemplary damages. Schlueter v. Schlueter, 975 S.W.2d 584,
589 (Tex. 1998). Appellant argues that because there was legally and factually insufficient
evidence to support the jury’s award of actual damages for fraud, there is legally and
factually insufficient evidence to support the jury’s award for exemplary damages. Porras
v. Craig, 675 S.W.2d 503, 505 (Tex. 1984). We agree. The trial court erred in overruling
appellant’s objections


 and in granting $299,000 exemplary damages to appellee because
there was no evidence of actual damages, which is a necessary prerequisite to an award
of exemplary damages. Id. The submission of question number 8 to the jury probably
caused the rendition of an improper judgment. Tex. R. App. P. 44.1(a)(1).
          Appellant’s issue number seven is granted, and we disregard and set aside said jury
question and finding number 8.
          Because appellee is not the prevailing party, we set aside the trial court’s findings
and award of attorney’s fees, interest and court costs, including costs of depositions to
appellee. Tex. R. Civ. P. 131; see Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon
1997). We reverse and render judgment that appellee take nothing from appellant; and
appellant shall recover judgment against appellee for court costs, including costs of
depositions. Tex. R. App. P. 43.2(c).
_____________________________
                                                                           MAURICE AMIDEI, JUSTICE
                                                                           (ASSIGNED)

Opinion delivered and filed
this 12th day of February, 2004.