# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 10, 2026

Lyle W. Cayce
Clerk

—————————

No. 24-10948

—————————

8300 Buckeye Delaware, L.L.C.,

*Plaintiff—Appellant*,

*versus*

UPS Supply Chain Solutions, Incorporated; United Parcel Service of America, Incorporated; Upinsco, Incorporated,

*Defendants—Appellees*.

———————————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:22-CV-726

———————————————————————————

Before Davis, Stewart, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Parties to a commercial lease agreement disputed which of them was liable for repairing extensive hailstorm damage to the leased property. The district court granted summary judgment in favor of the tenant, and the landlord appealed. We REVERSE and REMAND.

—————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-10948

I

A

On April 28, 2021, a hailstorm severely damaged the roof, skylights, and rooftop HVAC units on a commercial building that 8300 Buckeye Delaware, L.L.C. ("Landlord") leased to UPS Supply Chain Solutions, Inc. ("Tenant"). Landlord arranged for temporary repairs, and the parties began discussing what repairs were needed and which of them was responsible for those repairs under two specific terms of the lease.

Paragraph 11, titled "Maintenance and Repair," allocates maintenance and repair responsibilities between the parties.

> Tenant shall, at its own expense, maintain the interior of all portions of the Building other than the portions Landlord is obligated to repair . . . in good condition and repair . . . . *Landlord shall, at [its] sole cost and expense . . . maintain the exterior and structural components of the Building . . . in good repair, including . . . the roof (and skylights in the roof)*, exterior walls (but excluding painting), foundation, and structural frame of the Building.

Paragraph 20, titled "Fire and Other Casualty," governs damage or destruction by fire or other type of casualty.

> Tenant must, at Tenant's sole cost and expense, shall . . . adjust the loss with the insurance companies, . . . and arrange for the disbursement of insurance proceeds, . . . and thereafter shall repair, rebuild, or replace Building and other improvements . . . to restore the Demised Premises[1] to substantially the condition in which they were immediately

---

[1] The lease defines the "Demised Premises" as the entire leased property, including all buildings and structures on an 18.33-acre tract of land in Tarrant County, Texas.

prior to such damage or destruction. . . . If the net proceeds are insufficient to restore the Demised Premises, Tenant shall be obligated to pay such deficiency and the amount of any such deductible.

Tenant maintained an "All Risk" replacement cost insurance policy, which it obtained from UPINSCO.[2] Both parties made claims under the policy, and UPINSCO denied the claims.[3] Despite ongoing discussions and the exchange of engineering reports, the parties ultimately could not agree about the extent of the repairs needed and which of them was liable, under the lease, for making those repairs.

B

Landlord sued Tenant, UPINSCO, and United Parcel Service of America, Inc. ("UPSAI"), which guarantees Tenant's obligations under the lease, (collectively "UPS"), for declaratory judgment, breach of contract—the lease and insurance policy—and breach of guaranty. Tenant and UPSAI counterclaimed for breach of contract, alleging that Landlord had failed to replace the skylights and seeking reimbursement for the cost of repairing and replacing the damaged skylights. The parties filed cross-motions for summary judgment. The district court denied Landlord's motion

---

[2] Paragraph 8 of the lease requires Tenant to maintain an "All-Risk" insurance policy

> having a deductible not greater than . . . []$100,000[] and in an amount sufficient to prevent Landlord or Tenant from becoming a co-insurer . . . but in any event . . . not less than 100 percent of the actual replacement value of . . . [the] Building and improvements.

[3] The parties do not dispute that the hailstorm qualified as an "other casualty" under the lease.

and ultimately granted summary judgment in UPS's favor, concluding that under the terms of the lease, Landlord was liable for the damage to the roof.

"Reading . . . the [l]ease as a whole," the district court found that the parties intended that Tenant "be responsible for the parts of 'the Building' it used on a regular basis, while [Landlord] is responsible for the exterior and structural portions of the Building," including the roof and skylights. It interpreted "'the Building' [as having] meanings that vary depending on whether it is being used in the context of a party's obligations under the Lease versus being used to describe a structure on real property." "When used in provisions discussing its existence as a factual matter," like the insurance provisions, "'the Building' is a general term that collectively refers" "to all of its individual components," including the roof and skylight. But when used to distinguish the parties' obligations under the lease, "specifically as it relates to maintenance," the parties apparently "did not intend for the term [] to collectively refer to identical sets of individual components." The district court then "read[] the property insurance provisions containing the general term of 'the Building' in light of more specific terms apportioning responsibility between the parties elsewhere in the Lease," such as in the maintenance provision. The district court concluded that based on the application of well-established Texas rules of contract interpretation, construing the lease as placing responsibility for the roof and skylights on Landlord was "the most harmonious reading of the Lease and assigns greater weight to specific terms over general terms to avoid rendering any provisions meaningless."

Following a bench trial on damages, the court entered judgment awarding UPS $81,962.30. Landlord now appeals.

## II

"We review a district court's grant of summary judgment de novo, applying the same standard on appeal as that applied below." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We must draw all reasonable inferences and construe all evidence in the light most favorable to the nonmoving party. *See Rogers*, 755 F.3d at 353.

## III

Landlord argues that the district court erroneously assessed responsibility for storm damage under the routine maintenance provision of the unambiguous commercial lease instead of under the casualty repair provision.

## A

Under Texas law, the interpretation of an unambiguous contract presents a question of law, reviewed de novo. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 479 (Tex. 2019); *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).[4] The primary concern when interpreting an unambiguous contract under Texas law "is to ascertain and give effect to the intent of the parties as that intent is expressed in the contract." *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). To discern intent, courts should "examine and consider the *entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Id.*; *Int'l Turbine*

---

[4] The parties agree that Texas law governs and that the lease is unambiguous.

*Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002). "Generally, the parties to a contract intend every clause to have some effect and . . . [c]ourt[s] will not strike down any portion of the contract unless there is an irreconcilable conflict." *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex. 1983). Courts may "employ canons of construction as tools to harmonize them" only after determining that the provisions conflict. *In re Pirani*, 824 F.3d 483, 494 (5th Cir. 2016); *see Ogden*, 662 S.W.2d at 332; *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex. 1994).

Here, the maintenance and casualty provisions of the lease address distinct obligations triggered by different circumstances. The maintenance provision allocates routine maintenance responsibilities between the parties. It requires Tenant to "maintain the interior" of the building, while Landlord must "maintain the exterior and structural components . . . including . . . the roof (and skylights in the roof)." The casualty provision, in contrast, allocates financial responsibilities and restoration obligations that arise only in the event of a fire or other casualty and requires Tenant, at its sole cost, to repair or rebuild the building if it is "damaged or destroyed." The insurance provision reinforces the casualty provision's assignment of post-casualty obligations.

Read together, the maintenance and casualty provisions function in complementary rather than conflicting ways. *See Ogden*, 662 S.W.2d at 332 (holding that provisions serving different purposes do not conflict and can be harmonized). Each provision addresses a different subject, and neither limits nor negates the other. *See id.* Because the provisions do not conflict and can be readily harmonized, the district court erred in relying on interpretive canons to interpret the lease.

No. 24-10948

B

The parties agree that all of Landlord's claims and Tenant and UPSAI's counterclaim turn on the proper interpretation of the lease. Because the district court erred in its interpretation, its dismissal of Landlord's claims and entry of summary judgment and subsequent award of damages in favor of UPS must be reversed.

IV

We REVERSE and REMAND for further proceedings consistent with this opinion.