COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 


 
 
  
 ELIZABETH W. BUFKIN,
  
                             Appellant,
  
 v.
  
 EDWARD O. BUFKIN, JR.,
  
                             Appellee.
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
    
  ' 
  
 
 
  
  
                 No. 08-02-00025-CV
  
 Appeal from the
  
 330th District Court
  
 of Dallas County, Texas 
  
                (TC#96‑16958‑Y) 
  
 
 
 
 
  
  
 
 
  
  
 
 
  
  
 
 


MEMORANDUM OPINION

 








This is a contract construction
case.  Elizabeth W. Bufkin
appeals the refusal of the trial court to apply terms of her prenuptial
contract, thus affecting the property division in her divorce case.  She raises two issues related to the
interpretation of the antenuptial agreement.  In her first issue she argues the trial court
erred in granting appellee, Edward O. Bufkin=s, partial summary judgment, holding that his interest in the
Norgasco stock acquired after their marriage was
separate property.  In her second issue,
she contends the trial court abused its discretion in dividing the community
estate by failing to account for the increased value of the Norgasco
stock as required by the contract.  We
reverse and remand.

I

The procedural history is lengthy and
complex.  We see no necessity for a
complete recitation concerning the four years protracted litigation, including
the parties various bankruptcies, continuances and multiple motions.  The parties were married in 1987 and had no
children.  Notably, the parties
stipulated to both the validity and enforceability of the 1987 prenuptial
contract.  The trial court, through a
series of partial summary judgments, declared substantially all of the  property to be appellee=s separate property. 
In particular, the trial court granted a partial summary judgment on appellee=s Third Amended Second Motion for Summary Judgment.  In that motion, the court was asked  to determine Athe legal effect of the facts
surrounding the purchase of Norgasco stock by
Petitioner through the use of his separate property as collateral for the
loans.@  
Appellee also argued the effect of the 1987
prenuptial agreement, seeking to establish and maintain all property he
acquired in the first five years of marriage as his separate property.  By summary judgment, the trial court
concluded the 3,320 shares of common stock of Norgasco,
Inc. were, at the time of the 1988 purchase, appellee=s separate property.








Before trial, the trial judge issued
an eight page pretrial order concluding, as a matter of law, that appellant had
no claim to any increase in value of the separate property as provided in the
prenuptial agreement.  The pretrial order
was the result of a pretrial conference, undertaken when it was still
anticipated that the case would be a jury trial.  In this order the trial court also found that
the prenuptial contract was not ambiguous, the parties
intent was clear, and that under the contract, all income was separate during
the first five years of the marriage. 
The court further found that the parties intended to terminate certain
provisions of the contract, and that the law of Texas would apply to any
property, including income, acquired after the fifth anniversary of the
marriage.  The court went on to specifically
hold:  AThe allegations in Paragraph VI of
the Respondent=s (appellant=s) Counter-Petition alleging that, >increases in kind or value accumulated
after the first five years of marriage are community property= is [sic] denied as a matter of law.@ 
Texas law, rather than the contract, was to be applied to income,
accumulation of property, increases in kind or value, and reimbursement claims
after the fifth anniversary, July 26, 1992. 
Many of these findings or conclusions were brought forward in the
divorce decree, where the court specifically stated that the contract was valid
and enforceable at the time of the divorce, while still denying the disputed
increase in value 
clause.  The court also
ruled pretrial, that appellant had no cause of action with a remedy for appellee=s failure to provide accountings and disclosures, required
under the prenuptial contract.  The
pretrial order, after due admonishments, allowed appellant to proceed pro se
and also allowed withdrawal of appellant=s trial counsel.








II

We review the trial court=s granting of a motion for summary
judgment de novo.

Natividad v. Alexsis,
Inc., 875 S.W.2d
695, 699 (Tex. 1994); Tex. Commerce Bank-Rio

Grande Valley v. Correa, 28 S.W.3d 723, 726 (Tex.
App.--Corpus Christi 2000, pet.

denied). 
When reviewing a summary judgment under either the no‑evidence
standard

or the traditional standard, we view
the evidence in the light most favorable to the

non‑movant,
disregarding all contrary evidence and inferences. 
Morgan v. Anthony, 27

S.W.3d 928, 929 (Tex. 2000); Randall=s Food Mkts.,
Inc. v. Johnson, 891
S.W.2d 640,

644 (Tex. 1995); Flameout Design & Fabrication, Inc.
v. Pennzoil Caspian Corp., 994

S.W.2d 830, 834 (Tex. App.--Houston
[1st Dist.] 1999, no pet.).








The trial judge has wide discretion
in dividing the parties= community estate.   Murff v. Murff, 615 S.W.2d 696, 698
(Tex. 1981); Winkle v. Winkle, 951 S.W.2d 80, 87 (Tex. App.--Corpus
Christi 1997, pet. denied).  The
party attacking the property division bears the heavy burden of showing that
the trial court=s property division was not just and right.  Goetz v. Goetz, 567
S.W.2d 892, 896 (Tex. Civ. App.--Dallas 1978, no
writ).  We must indulge every
reasonable presumption in favor of the trial court=s proper exercise of its
discretion.  Vannerson v. Vannerson, 857 S.W.2d 659, 669 (Tex. App.--Houston [1st
Dist.] 1993, writ denied).  One
who complains of the trial court=s division of property must be able
to demonstrate from evidence in the record that the division was so unjust and unfair as to constitute an abuse of
discretion.  Finch
v. Finch, 825 S.W.2d 218, 221 (Tex. App.--Houston [1st Dist.] 1992, no
writ); Wallace v. Wallace, 623 S.W.2d 723, 725 (Tex. Civ.
App.--Houston [1st Dist.] 1981, writ dism=d).  A trial court=s division will not be disturbed on
appeal unless it appears from the record that the division was clearly the
result of an abuse of discretion.  Mogford
v. Mogford, 616 S.W.2d 936, 944 (Tex. Civ. App.--San Antonio 1981, writ ref=d n.r.e.).  The test for whether the trial court abused
its discretion is whether the court acted arbitrarily or unreasonably.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-43 (Tex. 1985); see also Wilson v. Wilson, 44 S.W.3d
597, 600 (Tex. App.--Fort Worth 2001, no pet.). 
And finally, where the record does not contain findings of fact and
conclusions of law, it is implied that the trial court made all necessary
findings to support its judgment.  Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992).








To the extent appellant contends the
trial court improperly disposed of claims or issues at the pretrial hearing
that should have been tried, we review such complaints by the same standard used
in reviewing a directed verdict.  Walden v. Affiliated Computer Services, Inc., 97 S.W.3d 303,
324 (Tex. App.--Houston [14th Dist.] 2003, no pet. h.).  A directed verdict is warranted when the
evidence is such that no other verdict can be rendered and judgment should be
granted as a matter of law.  Seymour v. American Engine & Grinding Co., 956 S.W.2d
49, 57 (Tex. App.--Houston [14th Dist.] 1996, writ denied).  Whether a contract is legally enforceable is
a question of law.  McCreary
v. Bay Area Bank & Trust, 68 S.W.3d 727, 733 (Tex. App.--Houston [14th
Dist.] 2001, pet. dism=d).

III

Appellant lists two issues.  Both challenges essentially deal with the Norgasco stock acquired during the marriage and its
increase in value.  First, she challenges
the trial court=s partial summary judgment that appellee=s entire interest in the Norgasco stock was his separate property because, under the
terms of the prenuptial agreement, the increased value was community
property.  Secondly, she contends the
trial court abused its discretion in dividing the community estate of the
parties by failing to account for the increased value of the Norgasco stock.








Turning our attention to the summary
judgment issue, we must observe that appellee=s Third Amended Second Motion for
Summary Judgment, dealt with the legal effect of the facts surrounding the
initial 1988 purchase of the stock by the use of his separate property as
collateral, and the prenuptial agreement. 
After a studied and lengthy history of the stock purchase, appellee concluded the common stock owned in the name of appellee was his separate property and should be so
declared by the summary judgment.  The
motion did not address the trial court=s pretrial legal conclusion that
appellant had no claim for increase in the value of the stock.  Issues not raised in the motion for summary
judgment, may not be disposed by such a motion. 
The first sentence of Rule 166a(c), added in 1971, plainly provides that
AThe motion for summary judgment shall
state the specific grounds therefor.@ 
Tex. R. Civ. P. 166a(c).  The Texas Supreme Court has repeatedly  ruled:

The
motion for summary judgment must itself state specific grounds on which
judgment is sought. . . .  The motion for
summary judgment must stand or fall on the grounds it specifically and
expressly sets forth. . . .  There is
authority to the effect that a summary judgment cannot be sustained on a ground
not specifically set forth in the motion.

 

McConnell v. Southside Independent
School Dist., 858
S.W.2d 337, 339 (Tex. 1993).  Accordingly, the
summary judgment only addressed and disposed of the bare legal title and
initial characterization of the stock. 
Therefore, we do not believe this issue is dispositive
of the increase in value claim, and turn our attention to appellant=s second issue.[1]








Appellant contends that the real
issue is how the prenuptial contract treats the stock=s increased value after July 26,
1992.  We agree.  Appellant argues the trial court was simply
wrong to construe the contract to automatically terminate all special
characterizations of the property after the fifth wedding anniversary, July 26,
1992.  Appellee
agrees with us that the trial court addressed this issue in its pretrial order,
which we delineated above.  Appellee argues that determining a contract to be
unambiguous is a question of law.  He
cites Fox v. Parker, 98 S.W.3d 713, 719 (Tex. App.--Waco 2003, pet.
denied) (rights and obligations under the agreement are determined as a matter
of law; review is de novo).  We
agree.  He argues an unambiguous contract
is construed according to the plain meaning of its express wording.  Appellee continues
that the following first and second sentences of the pertinent paragraph XVIII
support his thesis:

AThe parties agree that all of the provisions in this Antenuptial Contract characterizing the property of the
parties as separate property in contravention of Texas law in the absence of
this agreement shall terminate, be null and void, and of absolutely no force
and effect in respect to property acquired from and after five years after the
date of the marriage of the parties.  All
property acquired prior to the date five years from the date of marriage
of the parties as separate property of either of the partes
under the terms and provisions of this agreement shall remain the separate
property of the acquiring party.@  (Emphasis added.)

 

Contrary to the trial court=s conclusion, we hold the first
sentence applies to property acquired after July 26, 1992.  On the other hand, the second sentence
facially applies to property acquired before July 26, 1992.  The center of the storm, however, is found in
the last portion of XVIII which provides:

AIt is agreed by the parties that from and after the
date which is five years from the marriage of the parties . . . and any income
or increases in kind or value that are yielded by the separate property of
either party shall become the community property of the parties provided that
it is acquired or produced from and after such date.@  (Emphasis
added.)

 

Appellee argues the Norgasco
stock was not acquired or produced after the fifth anniversary and therefore
there is no increase in kind or value. 
It seems to us that increases in kind or value of the stock were
susceptible of being produced from the separate property both before and after
the anniversary.  We agree the stock was
not acquired after the anniversary, but appellant wholly fails to distinguish
the plain language 
that any increase in kind or value produced after the anniversary
is community, under the agreement.








Without citation to authority, appellee continues his argument referring to the inception
of title rule and that appellant could only make a claim of reimbursement.  However, the parties clearly sought to
abrogate these common law and statutory rules by their contract.  And, in the unique circumstances of this
case, the parties stipulated to both the validity and enforceability
of the prenuptial contract.  Once a party
stipulates to the validity of a contract, he may not then argue its
invalidity.  The parties= stipulations amount to judicial
admissions, which normally are conclusive on the party making them.  See Mendoza v. Fidelity & Guar.
Ins. Underwriters, Inc., 606 S.W.2d 692, 694 (Tex. 1980); see also
Daimler‑Benz Aktiengesellschaft v. Olson, 21
S.W.3d 707, 718 (Tex. App.--Austin 2000, pet. dism=d w.o.j.), cert.
denied, 535 U.S. 1077 (2002).








Further, appellee
obtained his summary judgment characterizing the stock as his separate property,
in part based on the same prenuptial contract. 
Although the stock was purchased one year after the marriage, and
arguably with some community credit, it was found to be his separate property.  Now appellant would have us apply the portion
of the contract contrary to Texas law characterizing property acquired after
marriage as separate property and at the same time not allow validity to the
corresponding contractual provision which allows the community estate to
benefit from any increase in kind or value of the self same stock.  Appellee argues
against what we believe is the clearly expressed intent of the parties to make
all increases in value of the same property, community.   Appellee does
concede that the parties can agree to create jointly owned property, as opposed
to community property.  In addition to appellee=s stipulation to the validity and enforceability of the
contract, he failed to raise any defense to the validity and enforceability of
the contract as required under the Family Code. 
Tex. Fam. Code Ann. ' 4.006(c) (Vernon 1998).








 Before we address the parties
argument about the asserted abuse of discretion in the division of any increase
in the Norgasco stock, we consider their contentions
on whether there was any evidence of increase in value.  Appellee argues
there was none.  Appellant says yes,
there is evidence of increase.  According
to appellee, the Norgasco
stock was purchased in two blocks, the first on September 26, 1988, accounting
for 2500 shares at $140 per share.  The
other block of 1250 shares were purchased at the same price, for a total
combined price of $525,000.  Appellee claims there was a November 1993 sale of 430
shares at $627.[2]  Appellant points out that at appellee=s bankruptcy filing that appellee
estimated the value of the stock at $619,000 on April 17, 1997.  However, in papers filed with Compass
Financial Bank, appellee listed the value of the same
stock at $2,676,871.90 in November of the same year.  The parties 1994 tax
return showed a profit of $179,316 on the sale of 430 shares, at a value of
$627 per share.  The company had rejected
the offer to sell the stock at the $627 price. 
Appellee valued the stock at $750 or $752.74,
on October 31, 1994.  In 1998 the company
purchased apparently the same 430 shares at $500 per share from a shareholder=s estate.  However, this was a sale apparently not
offered to third parties, by the estate. 
Appellee also testified that at the time of
trial the company would pay to a surviving spouse $567 per share.  The company was not required to purchase the
stock but merely had a right of first refusal.

The record indicated that initial
1988 post-marital purchase of Norgasco shares by appellee was at a price of $134 to $140 per share.  Between the 1992 fifth wedding anniversary
and the time of trial, the record variously supports a value of between $500
per share to $752.74 per share.[3]  Accordingly, with a value difference
potentially exceeding over two million dollars, we cannot say that such a
difference had a di minimis
effect of the trial court=s division of property. 
McElwee v. McElwee, 911 S.W.2d 182, 189
(Tex. App.--Houston [1st Dist.] 1995, writ denied).








Finally, we address whether or not
the misconstruction of the prenuptial contract was an abuse of discretion that
affected the property division of the parties. 
When the trial court mischaracterizes property as separate, then that
property is not divided as part of the community or jointly owned estate.  See id.  And if undivided property has value, that
would have effected the just and right division, then such error is harmful and
requires the appellate court to remand the entire community estate to the trial
court for a just and right division of the properly.  Id. 
We cannot reverse only part of a property division.  Jacobs v. Jacobs, 687 S.W.2d 731, 732
(Tex. 1985) (a court of appeals must remand the entire community estate for a
new division when it finds reversible error which materially affects the trial
court=s Ajust and right@ division of the property).

Here, in the pretrial conference, the
trial court ruled as a matter of law, that appellant had no claim, under the
prenuptial contract, for any increase in value after the fifth wedding
anniversary.  In our  de novo review of the
contact language we have determined that the unambiguous language allows for a
claim for increases in kind or value yielded after July 26, 1992, provided the
increase is produced after that date.  See
MCI Telecommunications Corporation v. Texas Utilities Electric Company, 995
S.W.2d 647, 650 (Tex. 1999) (construction of unambiguous written instrument is
a question of law for the court); see also Tex. Fam. Code Ann. ' 4.006(c) (Vernon 1998) (remedies and
defenses to enforcement of premarital agreements in this section are
exclusive).  The parties stipulated to
both the validity and enforceability of this agreement and we not look behind
this judicial admission.  Thus, where the
validity of the contract is established, by not honoring the parties express
intent in the contract to make certain increases community property, the trial
court plainly denied allowable contractual rights of appellant   We sustain appellant=s second issue and reverse that
portion of the trial court=s pretrial order and judgment denying appellant=s contract claims for increases in
kind or value 








accumulated after the first five years of
marriage.  We remand for a just and right  property
division.  Jacobs, 687 S.W.2d at 732.

 

DON
WITTIG, Senior Justice

November 20, 2003

 

Before Panel No. 5

Barajas, C.J., Larsen, and
Wittig, JJ.

Wittig, J., sitting by
assignment

 











[1]The
parties vigorously dispute whether or not community debt was used to purchase
the stock acquired, significantly, after the marriage.





[2]It
appears that appellee erroneously confuses the
purported 1993 stock sale with the 1994 sale. 
Appropriate citation to the record is also lacking.  See Tex.
R. App.  P. 38.1(h).





[3]Because
the trial court denied this entire claim as a matter of law pretrial, we should
not be read as performing a complete legal or factual sufficiency review on the
amount, if any, due under the contract. 
We only ascertain that there is evidence that this is not a di minimus claim
which in turn could otherwise render the legal error harmless.  Tex.
R. App.  P. 61.1(a).  Nor do we address the possible application of
Tex. R. App. P.  61.1.