# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00327-CV

**Cedar Contracting, Inc. and Lands & Leases, Inc., Appellants**

**v.**

**Ronald Hernandez and Connie Hernandez, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. D-1-GN-10-001914, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this lease dispute, Cedar Contracting, Inc. and Lands & Leases, Inc. (LLI) appeal the trial court's summary judgment declaring that Cedar Contracting's assignment of its rights under a commercial property lease with Connie Hernandez to LLI and subsequent sublease of the property to third parties violated the terms of its lease with Hernandez. The trial court denied Cedar Contracting's and LLI's motion for summary judgment and granted appellees' cross motion. In four issues, Cedar Contracting and LLI complain that the trial court erred in declaring that (i) the lease terminated upon Hernandez's notice of termination, (ii) Cedar Contracting did not have the right to freely assign the lease or sublease the property, and (iii) appellees did not tortiously interfere with the sublease and in awarding attorney's fee to appellees. For the reasons that follow, we affirm the trial court's judgment.

# FACTUAL AND PROCEDURAL BACKGROUND

In 1999, Cedar Contracting, as tenant, entered into a commercial property lease with Connie Hernandez's husband, Arnold, as landlord, for a term of ten years with five five-year renewal options. The lease designated the tenant as "Cedar Contracting, Inc. d/b/a Cedar Corp. or its assigns." The lease contained the following provisions:

> 12. ASSIGNMENT AND SUBLETTING. Tenant shall not assign this lease nor sublet the leased premises or any interest therein without first obtaining the written consent of the Landlord. An assignment or subletting without the written consent of Landlord shall be void and shall, at the option of Landlord, terminate this lease.
>
> . . . .
>
> 14. TENANT DEFAULT AND REMOVAL OF ABANDONED PROPERTY. If Tenant abandons the premises or otherwise defaults in the performance of any obligations or covenants herein, Landlord may enforce the performance of this lease in any manner provided by law. This lease may be terminated at Landlord's discretion if such abandonment or default continues for a period of 10 days after Landlord notifies Tenant of such abandonment or default and of Landlord's intention to declare this lease terminated. Such notice shall be sent by Landlord to Tenant at Tenant's last know address by certified mail. If Tenant has not completely removed or cured default within the 10-day period, this lease shall terminate. . . .
>
> . . . .
>
> 38. SPECIAL PROVISIONS. (This section to include additional data not included above.)
>
> > . . . .
>
> > 3. Landlord shall provide Tenant a ten (l0) day written notice to cure monetary default and thirty (30) day written notice to cure non-monetary default.

The majority of the lease is a preprinted form lease. Paragraph 38 is a typewritten addition.

In July 2000, Arnold died, and Connie inherited the property and succeeded Arnold as landlord under the lease. Her son Ronald acted as Connie's agent and assisted her with the management of the property.[1] Without Hernandez's knowledge, Cedar Contracting subsequently assigned the lease to LLI and in 2009 subleased the property to third parties. In August 2009, Hernandez learned of the assignment and sublease and objected. Two days after Hernandez objected, Cedar Contracting notified Hernandez of its intent to exercise its renewal option and four days later filed suit against Hernandez for tortious interference with the sublease.

On September 1, 2009, Hernandez filed an answer and gave notice of termination based on the provision in paragraph 12 of the lease prohibiting assignment or sublease without Hernandez's prior written consent. Hernandez subsequently filed a counterclaim for declaratory relief regarding the parties' rights under the lease and attorney's fees. Hernandez also sought damages for breach of contract, negligent waste, and conversion. LLI subsequently joined the lawsuit as a plaintiff. *See* Tex. Civ. Prac. & Rem. Code § 37.006(a) (requiring joinder of all parties having interest in outcome of suit seeking declaratory relief).

Cedar Contracting and LLI added claims for declaratory relief countering those of Hernandez, and the parties filed competing motions for partial summary judgment on the declaratory relief issues. The summary judgment evidence included the lease, assignment, sublease, notice of intent to exercise renewal, notice of termination, and affidavits by the parties, witnesses, and attorneys. The trial court granted Hernandez's motion, denied Cedar Contracting's and LLI's motion, severed the claims for declaratory relief from the remainder of Hernandez's claims, and

---

[1] We hereinafter refer to Connie and Ronald jointly as Hernandez.

3

entered a "final judgment." Cedar Contracting filed a motion for new trial, which the trial court denied. The trial court then determined it had not rendered judgment on the issue of LLI's liability for attorney's fees—because Hernandez's summary judgment pleadings had not supported it—and concluded that the judgment was not final. For that reason, the trial court granted LLI's motion for new trial. Hernandez filed a supplement to its counterclaim seeking relief against LLI only and a motion for summary judgment against LLI, which the trial court granted. The trial court subsequently rendered a final judgment combining the prior "final judgment" and the subsequent summary judgment.

In the final judgment, the trial court declared that (1) the lease terminated effective September 1, 2009; (2) the sublease is invalid; (3) the lease renewal is void; (4) Hernandez was justified and privileged to interfere with the sublease and is not liable for tortious interference; (5) Cedar Contracting is liable for attorney's fees and costs; (6) LLI has no rights under the lease; and (7) LLI is liable for attorney's fees and costs. The trial court further ordered that any attorney's fees and costs collected from Cedar Contracting were to be credited against the fees and costs awarded against LLI. The trial court denied Cedar Contracting's and LLI's motion for new trial, and this appeal followed.

## ANALYSIS

### Standard of Review

We review declaratory judgments under the same standard as other judgments or decrees. *Id.* § 37.010; *Hawkins v. El Paso First Health Plans, Inc.*, 214 S.W.3d 709, 719 (Tex.

4

App.—Austin 2007, pet. denied). Here, because the trial court rendered the declaratory judgment through summary judgment proceedings, "we review the propriety of the trial court's declarations under the same standards we apply to summary judgment." *See Hawkins*, 214 S.W.3d at 719. We review the trial court's decision to grant summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003).

When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions presented and, if we determine that the trial court erred, render the judgment the trial court should have rendered. *Dorsett*, 164 S.W.3d at 661 (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000)). When the trial court does not specify the grounds on which the summary judgment was granted, we must affirm if any of the summary judgment grounds are meritorious. *Texas Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 648 (Tex. 2004); *Knott*, 128 S.W.3d at 216. If we determine that a fact issue precludes summary judgment for either party, we remand the cause for trial. *See University of Tex. Health Sci. Ctr. v. Big Train Carpet of El Campo, Inc.*, 739 S.W.2d 792, 792 (Tex. 1987) (per curiam).

Cedar Contracting's and LLI's issues also involve matters of contract construction. Our primary concern in construing a contract, such as the lease, is to ascertain and give effect to

5

the intent of the parties as expressed in the instrument. *Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005) (per curiam). We must not look to isolated terms but are to consider the instrument as a whole. *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 789 (Tex. 1995); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) ("No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."). When the provisions of a contract appear to conflict, we must attempt to harmonize and give effect to all of the terms so that no part will be rendered meaningless. *Dorsett*, 164 S.W.3d at 662; *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex. 1983). In harmonizing provisions that appear to conflict, terms stated earlier in an agreement must be favored over subsequent terms, *Coker*, 650 S.W.2d at 393, the specific provision prevails over the general provision, *see Pilarcik v. Emmons*, 966 S.W.2d 474, 479 (Tex. 1998), and typewritten provisions prevail over preprinted provisions, *McCreary v. Bay Area Bank & Trust*, 68 S.W.3d 727, 732 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd). "Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Dorsett*, 164 S.W.3d at 662.

If an instrument is worded so that we can give it a definite or certain legal meaning, it is unambiguous, and we construe it as a matter of law. *Willis v. Donnelly*, 199 S.W.3d 262, 275 (Tex. 2006). If, on the other hand, the application of established rules of construction leaves an agreement susceptible to more than one meaning, it is ambiguous and creates a fact issue as to the parties' intent. *Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010) (per curiam); *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). "[A]mbiguity does

not arise simply because the parties advance conflicting interpretations of the contract." *Columbia Gas Transmission*, 940 S.W.2d at 589. Whether a contract is ambiguous is a question of law. *Id.*

**Termination of the Lease**

In their first issue, Cedar Contracting and LLI argue that the trial court erred in holding that the lease terminated on the date Hernandez gave notice of termination because Hernandez failed to give them thirty days' notice and an opportunity to cure the default.[2] They contend that paragraph 38(3) applies to all non-monetary defaults and, because there is no language in the lease providing that paragraph 38(3) does not apply to default under paragraph 12, Hernandez was required to comply with paragraph 38(3) before terminating the lease under paragraph 12. Cedar Contracting and LLI further argue that the unauthorized sublease was not automatically void but could be voided at Hernandez's option, which required prior notice and opportunity to cure. Finally, they assert that paragraphs 38(3) and 12 conflict and, as the typewritten addition, paragraph 38 controls over the form language of paragraph 12.

We find these arguments unpersuasive. Paragraph 12 clearly and unambiguously states that the tenant may not assign the lease or sublease the property without the landlord's prior written consent and that any assignment or sublease without such consent is void. This language is consistent with section 91.005 of the Property Code, which is made a part of every lease by operation of law as a matter of public policy. *See* Tex. Prop. Code § 91.005 ("During the term of a lease, the tenant may not rent the leasehold to any other person without the prior consent of the landlord.");

---

[2] It is undisputed that Hernandez did not give any notice prior to notice of termination under paragraph 12 of the lease.

*Reynolds v. McCullough*, 739 S.W.2d 424, 429 (Tex. App.—San Antonio 1987, writ denied).[3]

Section 91.005 applies to both assignments and subleases. *Gulf, C. & S. Ry. Co. v. Settegast*, 15 S.W. 228, 230 (Tex. 1891) (holding that predecessor to section 91.005, although not specifically mentioning assignments, applied to assignments as well as subleases); *718 Assocs., Ltd. v. Sunwest N.O.P., Inc.*, 1 S.W.3d 355, 362 (Tex. App.—Waco 1999, pet. denied); *Heflin v. Stiles*, 663 S.W.2d 131, 134 (Tex. App.—Fort Worth 1983, no writ). In order to change this statutory prohibition against assignments or subleases without landlord consent, the parties must clearly express such an intent. *Reynolds*, 739 S.W.2d at 429 (citing *Young v. De La Garza*, 368 S.W.2d 667, 670 (Tex. Civ. App.—Dallas 1963, no writ)); *Lawther v. Super X Drugs of Tex. Inc.*, 671 S.W.2d 591, 592 (Tex. App.—Houston [1st Dist.] 1984, no writ.). It is clear from the language of paragraph 12 that the

---

[3] In support of their argument that a sublease without consent is not automatically void but is instead only voidable at the option of the landlord, Cedar Contracting and LLI rely on a line of cases that we find inapposite. The majority of the cases they cite concern termination of the original underlying lease, not the sublease, and involve tenants, sublessees, or assigns seeking to avoid liability under the original lease by claiming it was terminated when the sublease or assignment occurred in violation of the lease terms. *See, e.g.*, *Young v. De La Garza*, 368 S.W.2d 667, 669 (Tex. Civ. App.—Dallas 1963, no writ); *Nelson v. Seidel*, 328 S.W.2d 805, 806 (Tex. Civ. App.—Houston 1959, writ ref'd n.r.e.). These cases stand for the rule that a provision prohibiting assignment or sublease without the consent of the landlord is for the benefit of the landlord and the effect of subleasing or assigning without the consent of the landlord is to give the landlord the right to terminate the lease, a right that may be exercised or waived by the landlord. *See, e.g.*, *Young*, 368 S.W.2d at 671; *Nelson*, 328 S.W.2d at 807–08. Hernandez expressly exercised the right to terminate and does not claim that the lease itself terminated automatically; therefore, these cases do not apply to the facts of this case.

Cedar Contracting and LLI also cite two cases in which the courts interpreted the predecessor to section 91.005 of the Property Code and held that an unauthorized sublease or assignment is voidable by the landlord. *See Elliott v. Dodson*, 297 S.W. 520, 522 (Tex. Civ. App.—Fort Worth 1927, no writ); *Scott v. Slaughter*, 80 S.W. 643, 645 (Tex. Civ. App—Dallas 1904, writ ref'd). However, the leases in these cases do not contain the same or similar language to that in paragraph 12 that if the property is subleased without the landlord's consent, the sublease "shall be void," and therefore these cases do not speak to the effect of that unambiguous language.

parties expressed an intent to follow, not to modify, the statutory prohibition. *See Reynolds*, 739 S.W.2d at 429; *Lawther*, 671 S.W.2d at 593–94; *cf. 718 Assocs.*, 1 S.W.3d at 359, 363 (lease contained express provision that lessee "shall have the right to assign . . . or sublet"); *Coffin v. Schulz*, 260 S.W. 612, 613 (Tex. Civ. App.—Waco 1924, no writ) (lease provided lessee had right to sublet or assign "at any time").

Nor does construing the lease in its entirety support an inference that the parties intended to modify the statutory prohibition. *See Frost Nat'l Bank*, 165 S.W.3d at 311–12; *Young*, 368 S.W.2d at 670. Paragraph 38(3) can reasonably be construed to modify and expand, for non-monetary default, the general ten-day notice provision contained in paragraph 14, which governs default generally but does not distinguish between monetary and non-monetary default. Paragraph 14 applies to all defaults not specifically addressed elsewhere in the lease. *See Zurita v. Lombana*, No. 01-01-01040-CV, 2003 Tex. App. LEXIS 4031, at *10–11 (Tex. App.—Houston [1st Dist.] May 8, 2003, pet. denied) (mem. op.) (general default provision allowing ten days to cure did not apply to extension option, which provided for automatic termination upon assignment or sublease and contained no notice-of-default provision). Paragraph 12 addresses unauthorized assignments and subleases and, like the extension option in *Zurita*, omits any provision for notice and opportunity to cure. As a more specific remedy than that provided in paragraph 14, directed at a particular default, paragraph 12 is no more modified by the broader thirty-day notice requirement of paragraph 38(3) than it is by the more general ten-day notice requirement in paragraph 14. *See McCreary*, 68 S.W.3d at 732; *Zurita*, 2003 Tex. App. LEXIS 4031, at *11.[4] Rather, because

---

[4] We also question whether an assignment or sublease without consent in violation of paragraph 12 is a curable default in light of the difficulty in calculating the measure of damages for such a breach. *See* Milton R. Friedman, 1 Friedman on Leases § 7.304(a) (4th ed. 1997).

9

the specific remedy provided in paragraph 12 applies only to an assignment or sublease without consent, it operates as an exception to and does not conflict with the provisions for default generally in paragraph 14 or the modifications in paragraph 38(3). *See McCreary*, 68 S.W.3d at 732 (more specific provision was exception to general provision and there was no conflict between the two provisions).

Therefore, adopting an interpretation that affords meaning to all provisions of the lease, *see Coker*, 650 S.W.2d at 394, we conclude that paragraph 38(3) neither applies to nor conflicts with paragraph 12, and that the rule that the typewritten provision should prevail over the preprinted form provisions does not apply. *See Southland Royalty Co. v. Pan Am. Petro. Corp.*, 378 S.W.2d 50, 57–58 (Tex. 1964) (construction of specific provision as not in conflict with more general provision gave effect to contract without resort to rules of construction that typewritten provision prevails); *McCreary*, 68 S.W.3d at 732.[5] Construing the lease as a whole and in light of the implied statutory prohibition, we further conclude that all of the lease provisions can be harmonized so that all terms can be given effect, paragraph 12 unambiguously prohibits and voids assignment or sublease without prior consent, and the notice requirement of paragraph 38(3) does not apply to paragraph 12. *See Dorsett*, 164 S.W.3d at 662; *McCreary*, 68 S.W.3d at 732; *Zurita*, 2003 Tex. App. LEXIS 4031, at *11. We therefore hold that the trial court did not err in finding as

---

[5] In addition, we observe that the more specific paragraph 12 appears earlier in the lease than the more general paragraph 38(3). Therefore, even if we were to conclude there is a conflict between the two provisions, paragraph 12 should be favored. *See Pilarcik v. Emmons*, 966 S.W.2d 474, 479 (Tex. 1998) (when there is conflict, more specific provision prevails over more general); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (when there is conflict, earlier provision prevails over subsequent terms).

a matter of law that the lease terminated when Hernandez gave notice of termination in accordance with paragraph 12. *See Willis*, 199 S.W.3d at 275. We overrule Cedar Contracting's and LLI's first issue.

**Cedar Contracting's Right to Assign or Sublease**

In their second issue, Cedar Contracting and LLI argue that the designation of tenant as "Cedar Contracting, Inc. d/b/a Cedar Corp. or its assigns" gives Cedar Contracting the right to assign or sublease at its discretion because the phrase "or its assigns" constitutes the prior consent of the landlord required under section 91.005 of the Property Code. They contend that the phrase would have no meaning if Cedar Contracting could not freely assign. They therefore argue that the designation, which implies free assignment, conflicts with paragraph 12, which prohibits assignment without consent, and that the two paragraphs cannot be harmonized simply by interpreting the designation to mean that any assignee, if allowed, would be bound by the same terms as Cedar Contracting because that is already stated in paragraph 31.[6] Thus, they contend, there is an irreconcilable conflict between the two provisions, and we must apply the rules of construction that earlier provisions prevail over later provisions and typewritten provisions prevail over preprinted provisions. Under those rules, they argue, because the phrase "or its assigns" appears first in the lease and is typewritten, it must be given preference over paragraph 12.

---

[6] Paragraph 31 states:

31. BINDING OF HEIRS AND ASSIGNS. Subject to the provisions of the lease pertaining to assignment of the Tenant's interest, all provisions of this lease shall extend to and bind, or inure to the benefit not only of the parties to this lease but to each and every one of the heirs, executors, representatives, successors, and assigns of Landlord or Tenant.

11

We find this reading of the lease strained at best. In support of their argument that the phrase "or its assigns" imparts a right to assign or sublease, Cedar Contracting and LLI cite *Dillingham v. Williams*, 165 S.W.2d 524, 526 (Tex. Civ. App.—El Paso 1942, writ ref'd w.o.m.). Both *Dillingham* and *Penick v. Eddleman*, 291 S.W. 194 (Tex. Comm'n App. 1927, judgm't adopted), on which the *Dillingham* court relied, involved leases containing references to the parties' assigns and, in the absence of any other provision to the contrary, the courts concluded that the references to the parties' assigns implied the lessors' consent. *Penick*, 291 S.W. at 194; *Dillingham*, 165 S.W.2d at 525–26.

It is clear, however, that any reference to assigns, must be "[c]onstrued in the light of the context of the rest of the contract as written." *See Penick*, 291 S.W. at 194; *Plainsman Trading Co.*, 898 S.W.2d at 789 (courts must construe instrument as a whole). It is generally understood that, notwithstanding a reference to assigns, other terms in the contract may show, as does paragraph 12 here, that assent to assignment is limited or that there is no assent. *See* Restatement (Second) of Contracts § 323 cmt. b (1981). Cedar Contracting and LLI have cited no cases, and we have found none, in which a court holds that the term "assigns" is sufficient to authorize assignment when there is language expressly restricting assignment. To the contrary, where the lease contains an express provision consistent with the statutory prohibition against assignment or sublease without consent, such as that in paragraph 12, courts have held that the use of the word "assigns" is insufficient to constitute a clear expression of the parties' intent to modify the statutory prohibition or otherwise grant the lessee free right to assign or sublease without prior consent. *See Reynolds*, 739 S.W.2d at 426, 428–29 (despite definition of lessee as including assigns, landlord's consent nevertheless

12

required under separate provision requiring prior consent); *Lawther*, 671 S.W.2d at 592–93 (provision that lease bound and inured to benefit of assigns did not prevail over separate provision requiring landlord's prior approval) (distinguishing *Penick* and *Dillingham*, in which leases contained no provisions restricting assignment or sublease).

We also reject the contention that the phrase "and its assigns" can have no other meaning than that advocated by Cedar Contracting and LLI. Contracts often refer to the assigns of the parties to indicate that the obligations are not personal, *see* Restatement (Second) of Contracts § 323 cmt. b, and the phrase can reasonably be construed to mean that Hernandez was willing to render performance to and intended to bind any future assignee, provided the assignment was performed in compliance with paragraph 12. *See Dorsett*, 164 S.W.3d at 662; *Ogden*, 662 S.W.2d at 332; *Reynolds*, 739 S.W.2d at 428–29. Nor do we agree that this construction of the phrase renders it meaningless in light of paragraph 31. Paragraph 31 binds both the landlord's and tenant's assigns and thus is consistent with but not redundant to the designation of tenant.[7] In addition, paragraph 31 is expressly made subject to the lease provisions pertaining to assignment of the tenant's interest, i.e., paragraph 12. Therefore, construed in light of the rest of the lease, the phrase "or its assigns" can reasonably be interpreted as neither redundant to paragraph 31 and therefore meaningless nor in conflict with paragraph 12, and we need not resort to the rule of construction

---

[7] We disagree with Cedar Contracting's and LLI's implied argument that any repetition of terms in a contract makes all but one of the uses of the term meaningless. By that reasoning, paragraph 38(3) would be meaningless in that it repeats the ten-day notice provision of paragraph 14. Thus, to the extent that the phrase "or its assigns" is redundant to paragraph 31, we reject the contention that either provision is therefore rendered meaningless.

13

that earlier provisions prevail over later provisions.[8] *See Dorsett*, 164 S.W.3d at 662; *Plainsman Trading Co.*, 898 S.W.2d at 789; *McCreary*, 68 S.W.3d at 732; *Penick*, 291 S.W. at 194. We overrule issue two.

**Tortious Interference and Attorney's Fees**

In issues three and four, Cedar Contracting and LLI challenge "the remainder of the trial court's findings"—that Cedar Contracting's purported lease renewal is void, that Hernandez was justified and privileged to interfere with the sublease and is not liable for tortious interference, and that Cedar Contracting and LLI are liable to Hernandez for attorney's fees—on the sole ground that these findings are based wholly on the erroneous findings addressed in issues one and two. Having concluded that the trial court did not err in declaring that the lease terminated on September 1, 2009, and that Cedar Contracting did not have free right to assign the lease or sublease the property, we cannot conclude that the trial court erred in the remainder of its findings on this basis. Because they have failed to assert any additional argument or authority on these issues, Cedar Contracting and LLI have waived any further bases for error in the judgment. *See* Tex. R. App. P. 38.1(i). We overrule issues three and four.

**CONCLUSION**

Having overruled Cedar Contracting's and LLI's issues, we affirm the trial court's judgment.

---

[8] An additional reason for rejecting Cedar Contracting's and LLI's interpretation of the phrase "or its assigns" as in conflict with paragraph 12 is that such an interpretation would nullify paragraph 12, and a construction that nullifies a provision should be avoided. *See Pilarcik*, 966 S.W.2d at 479.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Henson, and Goodwin
  Justice Henson not participating

Affirmed

Filed:   February 21, 2014